166 So. 620

## STEPHENSON v. STATE.
### 3 Div. 774.

Court of Appeals of Alabama.

March 10, 1936.

Hamilton & Jones, of Evergreen, for appellant.

[1] 26 Ala.App. 176.

Stephensons and with no witness to contradict it, the party went from the home of Stephenson into the lane between the two farms, and the elder Stephenson started calling hogs; whereupon two of his sows with pigs came up to the fence inside the field of Wallace, the deceased. He tolled these hogs down to where there was a gap in the fence of Wallace and got the hogs out at that place. About this time Wallace appeared with his young son, Gordon, a little boy about 8 years of age.

There existed between the elder Stephenson and Wallace bad feeling which had continued for some time, and, about the time Wallace arrived on the scene, he and the elder Stephenson began an insulting conversation, bandying words backward and forth, out of which grew the fatal shooting.

The Stephensons contend and testify that Wallace was armed with a pistol, and that he fired two shots at Stephenson, one of which took effect in Stephenson's shoulder, and that the elder Stephenson grabbed the gun from this defendant, fired one shot at Wallace, from the effects of which Wallace died.

All of the Stephenson witnesses testify that this defendant left the house before the difficulty took place, and at the insistence of his mother carried his gun for the purpose of shooting a hawk, and that among the Stephensons this single-barreled shotgun was the one weapon they had, and that the only other weapon in the group was a single-barreled shotgun carried by one of the negroes. Immediately after the difficulty began, the two negroes ran, and, so far as this case is concerned, they have faded out of the picture.

The contention of the defendant is, and the testimony offered by him tends to prove, that the difficulty was a sudden rencontre between his father, Neil T. Stephenson, and Wallace, the deceased; that he had nothing to do with it; that he was an innocent bystander and did not fire any gun there, nor did he take any part in the difficulty which resulted in the death of Wallace.

On the contrary, the testimony for the state by its only eyewitness, the 8 year old son of the deceased, tended to prove that the difficulty was unprovoked on the part of Wallace, that he was in the act of digging a post hole, and that, as he raised his arms in the digging, he was shot by this defendant, and that somebody else also fired at Wallace. The other testimony of the state,

A. A. Carmichael, Atty. Gen., for the State.

Brief did not reach the Reporter.

SAMFORD, Judge.

The defendant was indicted jointly with his father, Neil T. Stephenson, on a charge of murder in the second degree. On the trial a severance was demanded, and the stated elected to try the appellant first. He was convicted of manslaughter in the first degree, and sentenced to a term of seven years in the penitentiary.

Neil T. Stephenson, the codefendant and the father of appellant, and David Wallace, the deceased, were neighbors, living on adjoining tracts of land, with a lane between the respective farms. On the day of the homicide, Neil T. Stephenson, the defendant, who was about 20 years of age, his brother, who was then about 17 years of age, Stencille, who was about 13 years of age, and Jerome, who was about 10 years of age, together with two negroes, went together down to this lane to find some hogs which had been sold to one of the negroes and which had gotten away and come back to the place where it was raised. The defendant carried with him a single-barreled shotgun and one of the negroes had a single-barreled shotgun. As testified to by the

largely circumstantial, tended to prove that there were two explosions from a shotgun and one from a pistol, and that Wallace was shot from two directions.

There was much evidence, pro and con, tending to corroborate each of the statements and contentions, but as to this we may not concern ourselves, the whole presenting questions for the jury to weigh and to sift the evidence, finding therefrom the truth of the transaction to be applied to the law given in charge to them by the court.

When the body of Wallace was examined, after he died, there was found a number of wounds made by large shot, some of which were in the breast, others in the side under the arm, and, in addition to this, there was a bruise across his right hand apparently made by a lick from a stick. This bruise was explained by Stephenson, who said that, after the shooting had ceased, Wallace still held the pistol in his hand, and that he struck Wallace on the hand to make him drop the pistol.

When Gordon Wallace was called as a witness for the state, it was suggested that the court examine him on his voir dire, which was done, and in answer to questions he said: "I am eight years old. I do not know when I was eight. I do not know what my birthday is. My father was Dave Wallace; he is dead. God made me. I go to school. I know what happens to boys that tell stories. The booger man gets them. I am in the second grade at school." Whereupon, over the objection of the defendant, the court ruled that the witness was qualified to testify.

The first insistence of error is that the witness Gordon Wallace was not qualified to testify as a witness by reason of his tender years. There is no statute in this state fixing the age at which a child is competent to testify as a witness. The question of competency rests largely in the discretion of the trial court, who is in better position to judge the matter than an appellate court. Petty v. State, 224 Ala. 451, 140 So. 585.

In the absence of abuse of this discretion, the ruling of the trial judge allowing a child to testify after examination on its voir dire will not be disturbed. Petty v. State, supra, and authorities there cited.

The next insistence is: "The action of the Solicitor in the examination of witnesses about matters to the prejudice of defendant with no basis in the evidence for the facts inquired about." We are familiar with the case of Berger v. U. S., 295 U. S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, and cases of similar import. In Windom v. State, 18 Ala.App. 430, 93 So. 79, this court expressed itself on questions similar to the one here raised, and there laid down the rule that the manner of the examinations of witnesses was largely in the discretion of the court, and, in the absence of a gross misuse of his discretion, in itself evidencing a bias, this court will not interfere or review his rulings. This record does not disclose any such abuse of discretion in this regard as would warrant us in holding that there is such error as would warrant us in reversing this case on that point.

When Neil T. Stephenson was on the stand as a witness for defendant, he was interrogated by the state as to a conversation had between him and J. G. Moore, the sheriff, regarding the homicide, and during which conversation, and in connection therewith, Stephenson gave to the sheriff a pistol which he said belonged to Wallace, the deceased. When Moore, the sheriff, was being examined by the state in rebuttal and was being cross-examined by defendant, defendant offered to prove that in this same conversation and at the same time Moore asked Stephenson if he had a pistol and that Stephenson showed Moore his pistol. The court sustained the state's objection to this testimony, and defendant excepted. This was error. The state had brought out a part of the conversation and what took place between Stephenson and Moore. This entitled the defendant to the whole of the conversation and to what was said and done by the parties at the time. 7 Alabama and Southern Digest, Criminal Law, ⊚⇒396 (2). It may be that the weight of this evidence was slight, but in a hotly contested homicide case we cannot say that the exclusion of this evidence was not injurious to defendant's cause.

The court at some length and ably charged the jury orally as to the law of conspiracy, thus emphasizing the effect of a conspiracy on the pending case. If there had been any evidence of a conspiracy to do an unlawful act directed at Wallace, the deceased, this would have been proper, but all of the evidence rebutted any idea of a conspiracy on the part of this defendant to do any unlawful act. Conspiracy is one thing, and its consummation is another, and, while a conspiracy to do an act is evidence tending to connect a defendant with its consum-

mation, there must be some evidence tending to prove the conspiracy before the jury is authorized to reach such a conclusion.

All of the evidence in this case is to the effect that the homicide was the result of a sudden rencontre between Neil T. Stephenson and Wallace. If this defendant was there aiding or abetting, he would be guilty, but his defense should not be burdened with a charge of conspiracy when there is no evidence to sustain such a contention. In view of this, the court should have given defendant's written charges X and Z, which state correct propositions of law eliminating the charge of conspiracy which had been emphasized in the court's oral charge.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.