78 So.2d 813

**James PYLES, alias,**

**v.**

**STATE.**

**7 Div. 251.**

Court of Appeals of Alabama.

March 3, 1954.

Rehearing Denied April 14, 1954.

Affirmed on Mandate March 8, 1955.

Merrill, Merrill, Vardaman & Matthews, Anniston, for appellant.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Owen Bridges, of counsel, for the State.

HARWOOD, Judge.

This appellant was indicted for murder in the first degree. His jury trial resulted in a verdict of guilty of manslaughter in the first degree, punishment being fixed at imprisonment in the penitentiary for a term of five years.

The evidence presented by the State tended to show that the appellant, James Pyles, went to the house where the deceased, Den-

nis Brooks lived, in search of his wife, who had been absent from the Pyles home overnight.

He was told by the deceased that the woman was not there. The appellant left, but returned in about fifteen minutes and began to threaten to kill the deceased.

The deceased at this time was sitting in a swing on the porch.

The appellant shot at the deceased twice with a pistol, but missed hitting him. The appellant then began to hit deceased over the head with the pistol, knocking the deceased off the porch. From these head blows the deceased died about a week later.

Several of the State's witnesses testified that Bertha Lee Pyles, the wife of the appellant, was not in the house where Brooks lived, nor had she been there at any time.

For the defense the appellant testified after his wife had been away from home over twenty-four hours he went in search of her.

Upon asking the deceased if his wife was at deceased's house the deceased said she was not, and started cursing him.

The appellant contended that he then walked to an adjoining yard and said a few words to the owner there, and while so talking he saw his wife come out of deceased's house.

He then went back to the porch of deceased's house and, grabbing his wife by the hand, asked deceased why he had lied to him.

The deceased, according to the appellant, hit him and he fell from the porch. The deceased continued his attack and the appellant got his pistol from his pocket and struck deceased over the head, the pistol discharging as he hit the deceased with it.

Bertha Lee Pyles, appellant's wife, as a defendant's witness, testified that she had gone to the house where deceased lived the day before the shooting, and had remained there until the shooting.

Her account of the difficulty in general tends to corroborate that given by the appellant.

On cross-examination she testified that she was in a front room when appellant first inquired for her. The record shows her examination in this regard as follows:

"Q. Now, do you know whether that was the first time he had come to that house looking for you? A. Yes, sir.

"Q. And you heard him ask for you? A. Yes.

"Q. And you didn't answer him? A. No.

"Q. And you didn't tell him you were not there? A. No.

"Q. It is a little three-room house, isn't it? A. Yes.

"Q. And you were in the front room? A. Yes.

"Q. And he was in the yard? A. Yes.

"Q. And you didn't step there to the door and say 'Here I am?' A. No.

"Q. You were not there, were you? A. Yes, I was.

"Q. But you didn't say anything to your husband? A. No."

*    *    *    *    *    *

"Q. And you heard him say that first time that he was looking for you? A. Yes.

"Q. And you lived only two or three blocks away from there? A. Yes.

"Q. And you stayed there for fifteen or twenty minutes—until he came back? A. Yes."

On redirect examination defense counsel propounded the following question to this witness:

"Q. Will you tell us why you didn't come out the first time he called for you?"

The court sustained the State's objection to this question, and exception to the ruling was duly reserved.

Where upon examination of a witness he admits having made statements, or done acts contradictory of or discrediting to his

testimony, the other party may, on further examination inquire fully into the transaction, or bring out the whole conversation. Kimbrell v. State, 18 Ala.App. 641, 94 So. 241; Stephenson v. State, 27 Ala.App. 122, 166 So. 620; Campbell v. State, 32 Ala.App. 461, 27 So.2d 220; Campbell v. State, 23 Ala. 44; Johnson v. State, 102 Ala. 1, 16 So. 99; Turner v. State, 224 Ala. 345, 140 So. 448; Richardson v. State, 237 Ala. 11, 186 So. 580; Wesson v. State, 238 Ala. 399, 191 So. 249; Key v. State, 240 Ala. 1, 197 So. 363; Colvin v. State, 37 Ala.App. 268, 70 So.2d 650, affirmed, 260 Ala. 338, 70 So.2d 654.

The silence of Bertha Lee in not disclosing her presence when her husband called for her could not but tend, and strongly, to discredit, if not contradict, her testimony to the effect that she was present in the house. Particularly is this true in light of the testimony of several State's witnesses that she not only was not in the house, but had not been there at any time.

Because of the ruling in this instance this cause must be reversed.

Reversed and remanded.

### After Remandment.

This cause has been remanded to us for further consideration.

The Supreme Court in its opinion has stated: "The question before us seems to be simply whether or not the rule of exclusion shall be any longer adhered to. * * * we are not disposed to thus allow it to be removed by the process of attrition by engrafting on the rule exceptions to it." 78 So.2d 817.

There is such a gloss of exceptions already written around the so-called rule of exclusion that it was certainly not our intention to further obfuscate the principle by attempting to ingraft any additional exceptions.

One of the fairly clear exceptions to the rule of exclusion however is that where, *upon cross-examination,* a witness admits having made statements, *or done acts,* which are contradictory of or discrediting to his testimony, he may testify on redirect examination what was his motive or reason for making the statement, *or doing the act,* even though his testimony is only of an uncommunicated mental state. See authorities cited in original opinion, and those cited in dissenting opinion of Livingston, J., in McGuff v. State, 248 Ala. 259, 27 So. 2d 241.

We think the facts of the present case place it fairly within this exception.

The opinion of the Supreme Court further states: "From the facts as set out in the opinion of the Court of Appeals it does not appear that failure to speak up was inconsistent with her presence in the house." (Referring to appellant's wife.) 78 So. 2d 817.

We concluded in our original opinion that the witness' silence in not disclosing her presence when her husband called for her did discredit, if not contradict, her testimony to the effect that she did not make her presence known.

"A failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. This is conceded as a general principle of evidence." Wigmore, 3rd Ed., Vol. III, Sec. 1042.

The Supreme Court further writes: "In this case the testimony of the State's witnesses that the defendant's wife was not in the house was strenuously denied by the witness. If it were admitted there of course would be no inconsistency. It not being admitted, the case does not come within the exception—it is just another controverted fact in the trial of a case."

We fail to see how the existence of the contradiction renders impotent the exception to the rule of exclusion to which we have adverted. In fact it would seem to us that not to let in the exception not only prevents the discredited witness from rehabilitating herself, but in addition tends to corroborate the State's witness' testimony that the wife was not in the house, with no opportunity of rebuttal of this inferential corroboration.

126

Regardless, by the provisions of Sec. 95, Title 13, Code of Alabama 1940, the decisions of the Supreme Court are controlling upon us, and the matter is now settled contrary to our views.

No other meritorious question is presented by the record.

■ While there was evidence to the effect that the deceased probably would not have died had he not left the hospital prematurely, such evidence creates no defence. If a wound is mortal or dangerous, the person who inflicted it cannot excuse his acts under the assertion of erroneous treatment. Washington v. State, 31 Ala. App. 41, 13 So.2d 200; Warren v. State, 32 Ala.App. 273, 25 So.2d 51.

■ Appellant's charge 11 was properly refused. This charge was misleading and abstract under the evidence since there was no dispute but that the deceased died of the wounds inflicted by this appellant. The charge is also palpably otherwise faulty.

Affirmed on authority of Pyles v. State, 262 Ala. 1, 78 So.2d 816.