Janice Glasco was indicted for capital murder in violation of § 13A-5-40(a)(2), Code of Alabama 1975. The jury found the appellant "guilty of manslaughter as charged in the indictment." She was sentenced to 10 years' imprisonment in the state penitentiary.
Randell Curry testified that at approximately 5:00 p.m. on July 11, 1984, he and a friend were on their way to Bankhead Forest in Lawrence County, Alabama, when they noticed the appellant's blue Maverick automobile parked at the intersection of Highway 33 and Ridge Road. Two women were in the front seat of the vehicle and a young boy was in the back seat.
Approximately 10 to 15 minutes later, Curry drove by the intersection again and noticed that the blue Maverick was still there. Curry continued driving down the mountain on Highway 33 toward Moulten, Alabama and, after driving a short distance, passed Lehman Wood, the victim, driving a white Ford truck up the mountain toward Ridge Road.
A few minutes later, Curry decided to go to Alreds Hunter's Camp on the mountain. He turned his vehicle around and started back up the mountain. At some point below the intersection of Highway 33 and Ridge Road, Curry passed the blue Maverick traveling on Highway 33. He noticed three adults sitting in the front of the vehicle.
When Curry passed the intersection, he saw Wood's truck parked there. Wood's body was lying on the ground in front of his truck. Curry flagged a passing motorist down to call the authorities. Wood was dead when the coroner arrived. He had been shot twice, once in the neck and once in the chest.
The Sheriff's Department issued a bulletin advising local law enforcement authorities to be on the lookout for a blue Maverick containing three adults and a small boy. The suspects were described as being the appellant, Debbie Hamilton, Tommy Hamilton and the appellant's son, Jason.
Officer Johnny Norton with the Trinity, Alabama Police Department spotted the suspects in Trinity and notified Chief Mike Durbin of the Trinity Police Department. The appellant, Tommy Hamilton and the appellant's son were in the parked vehicle when Officer Durbin arrived. Debbie Hamilton was using a pay telephone near the parked vehicle.
The officers advised the suspects to get out of the car and the three adults were handcuffed and separated. Chief Durbin *Page 56 
advised the appellant of her Miranda rights. Officer Norton then asked the appellant for the key to her car and she gave him permission to look in her purse for it. When Officer Norton looked in her purse, he saw a one hundred dollar bill. An inventory search of the purse conducted later revealed that it contained two one hundred dollar bills and other currency totaling $218.00. He did not find the key in her purse. It was subsequently discovered inside the automobile.
A shotgun and some beer were discovered in the trunk of the appellant's automobile. Hair found on the appellant's automobile was consistent with that of the victim. Blood and fatty tissue consistent with that of the victim was found on the appellant's automobile. Blood stains found on a shirt in the appellant's automobile were consistent with that of the victim.
Ed Weatherford, an investigator with the Lawrence County District Attorney's Office, testified that he observed a large spot and trail of blood near where the victim was discovered. The distance from the blood spot to the victim's body was eight feet and 11 inches.
Following the appellant's arrest, her son, Jason, gave a statement to Weatherford which included the location of the gun used to kill the victim. This gun, a 30-30 rifle and a box of shells were found in a wooded area behind the appellant's mother's house.
Mamie Lentz, who works at Lentz Grocery, testified that the appellant purchased some shells from her on July 11, 1984.
The appellant's brother, Tommy Hamilton, was arrested with this appellant and convicted of the capital murder of Lehman Wood. He received the death sentence.
The appellant's sister-in-law, Debbie Hamilton, who was 15 at the time of the shooting, was also arrested with the appellant. She pled guilty to murder in connection with the shooting and received a life sentence. In exchange for the disposition of her case she agreed to testify for the State in the case at bar.
Ms. Hamilton testified that, at approximately 7:30 a.m. on July 11, 1984, she, the appellant, the appellant's son, Jason, and her husband, Tommy Hamilton, purchased one half of a case of beer. The appellant cashed a check for $80.
At the appellant's suggestion, they went to the house of a man named Loyle Chaffin and stole two guns. They continued drinking and driving around in the appellant's automobile. Ms. Hamilton and her husband had an argument because the appellant told Tommy Hamilton that Ms. Hamilton had been sleeping with "Big" Tommy Hamilton for money. Tommy indicated that he was going to kill "Big" Tommy.
Ms. Hamilton testified that the appellant bought a box of rifle shells at Lentz's Store and then called "Big" Tommy and asked him to meet them at Chickenfoot. The group went there to wait for "Big" Tommy but he never showed up. Tommy was hiding in the woods with a gun.
Ms. Hamilton testified that the appellant suggested that they kill Lehman Wood and rob him. The appellant had dated Wood. A week before the incident the appellant remarked that Lehman Wood had "dumped her" and she was going to get him back.
Ms. Hamilton testified that Tommy and the appellant arranged an ambush whereby Tommy would hide in the woods and shoot Wood with the rifle. When Wood pulled up in his truck Tommy shot him in the neck. Ms. Hamilton and the appellant then dragged his body across the road since he had fallen in front of the appellant's car. Ms. Hamilton removed money from Wood's pocket and gave some to the appellant and Tommy. Before they left, the appellant was afraid that Wood was not dead so she had Tommy shoot him again. As they were leaving, the appellant made the statement, "We got away with it."
They washed the car off at a car wash and hid the guns at the appellant's mother's house. The appellant's son was with them the entire time.
The appellant admitted to having been present at the scene of the crime. She testified, however, that she did not encourage the shooting and had been sleeping in the car just prior to the time that Wood *Page 57 
drove up. The appellant stated that Ms. Hamilton alone dragged Wood's body across the road.
 I
The appellant contends that there was insufficient corroboration of the co-defendant, Debbie Hamilton's, testimony under § 12-21-222, Code of Alabama 1975. We disagree.
 "The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973); Andrews, supra. As this Court stated in Andrews, supra: "The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. "Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony." Malachi v. State, 89 Ala. 134, 140-141, 8 So. 104, 106 (1889); Smith v. State, 230 Ala. 413, 416, 161 So. 538 (1935); Brown v. State, 31 Ala. App. 529, 19 So.2d 88 (1944). The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Bridges v. State, 52 Ala. App. 546, 295 So.2d 266 (1974); Dykes v. State, 30 Ala. App. 129, 1 So.2d 754 (1941). Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. State v. Canada, 107 Ariz. 66, 481 P.2d 859, cert. denied, 404 U.S. 848, 92 S.Ct. 154, 30 L.Ed.2d 87 (1971). See Pearce v. State, 26 Ala. App. 492, 495, 164 So. 114, cert. denied, 231 Ala. 150, 164 So. 118 (1935) ("(B)ut, as we read the cases, the corroboratory evidence, if it meets the test of 'tending to connect the defendant with the commission of the offense', need not be, in and of itself alone, that tending in any wise to fasten guilt upon the defendant"); 23 C.J.S. Criminal Law § 812(3) (1961). The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. Lowe v. State, 32 Ala. App. 176, 22 So.2d 618 (1945). The corroboration of an accomplice may be shown by circumstantial evidence. Blevins v. State, 56 Ala. App. 115, 319 So.2d 734, cert. denied, 294 Ala. 753, 319 So.2d 739 (1975); Tidwell v. State, 23 Ala. App. 409, 126 So. 186
(1930).
 "In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration Ross v. State, 74 Ala. 532 (1883); DeGraaf v. State, 34 Ala. App. 137, 37 So.2d 130 (1948). 370 So.2d, at 322.
"And, as was further stated in Jacks, supra,
 " 'The corroborative evidence need not refer to particular statements testified to by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776 (1936); Malachi v. State, 89 Ala. 134, 8 So. 104 (1889). "It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative criminating force of his testimony and tends to connect the defendant with the commission of the offense it is sufficient to warrant the submission of the issue of guilt or innocence to the jury." ' Smith v. State, 230 Ala. 413, 416, 161 So. 538, 542 (1935).
" '. . .
 " 'Additionally, sufficient corroboration of the testimony of an accomplice may be furnished by a tacit admission by the accused, by the suspicious conduct of the *Page 58 
accused, and the association of the accused with the accomplice, or by the defendant's proximity and opportunity to commit the crime. Cheatwood v. State, 22 Ala. App. 165, 113 So. 482, cert. denied, 216 Ala. 692, 113 So. 915 (1927); 23 C.J.S. Criminal Law § 812(4).'
 'In determining the sufficiency of corrobative evidence testimony the entire conduct of an accused within reasonable time limits of the date of the offense may be examined.' Fuller v. State, 34 Ala. App. 211, 215, 39 So.2d 24, 27 [cert. denied.] 252 Ala. 20, 39 So.2d 29 (1949). An accused's consciousness of guilt as shown by the evidence may be corroborative. Fuller, 34 Ala. App. 215, 39 So.2d 24. 364 So.2d at 404, 405." (emphasis added)
Ware v. State, 409 So.2d 886 (Ala.Crim.App. 1981), writ quashed, 409 So.2d 893 (Ala. 1982) (quoting Jacks v. State,364 So.2d 397 (Ala.Crim.App.), writ denied, 364 So.2d 406 (Ala. 1978)).
There was clearly sufficient corroboration of Ms. Hamilton's testimony. The State presented evidence which positively placed the appellant at the scene of the shooting in the company of the Hamiltons. Indeed, her presence was uncontroverted. SeeWhite v. State, 47 Ala. App. 282, 253 So.2d 351 (1971).
Additionally, the evidence showed that the appellant purchased shells for the rifle which was determined to be the murder weapon. A large sum of money was found in the appellant's purse following her arrest. Physical evidence gathered from the appellant's automobile linked this appellant to Wood's murder. The trial judge committed no abuse of discretion in submitting Ms. Hamilton's testimony to the jury. See Thompson v. State, 374 So.2d 388 (Ala. 1979).
 II
The appellant contends that the evidence was insufficient to sustain her conviction. We disagree.
 "In reviewing the sufficiency of the evidence the appellate courts of this State are bound by several well settled rules. It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty. Instead, the function of the Court is to determine whether there is legal evidence from which a jury could by fair inference find the defendant guilty. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1979); Scruggs v. State, 359 So.2d 836, 842 (Ala.Cr.App.), cert. denied, 359 So.2d 843
(Ala. 1978).
 "In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. Ellis v. State, 338 So.2d 428
(Ala.Cr.App. 1976); Edson v. State, 53, Ala. App. 460, 301 So.2d 226 (1974). The evidence must be considered in the light most favorable to the prosecution. Colston v. State, 57 Ala. App. 4, 325 So.2d 520 (1975), cert. denied, 295 Ala. 398, 325 So.2d 531 (1976).
 "Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Bell v. State, 339 So.2d 96 (Ala.Cr.App. 1976). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust. Bridges v. State, 284 Ala. 412, 225 So.2d 821
(1969); Morton v. State, 339 So.2d 423
(Ala.Cr.App. 1976). There is a presumption in favor of the correctness of a jury's verdict, and when the trial judge declines to grant a new trial that verdict is strengthened on appeal. Tolliver v. State, 50 Ala. App. 654, 658, 282 So.2d 92 (1973)."
Johnson v. State, 378 So.2d 1164, 1969 (Ala.Crim.App. 1979).
The State based its case against the appellant on a complicity theory. See § 13A-2-23, Code of Alabama 1975. Uncontroverted evidence placed the appellant *Page 59 
at the scene of the crime. Through the properly corroborated testimony of Debbie Hamilton, the State met its burden of showing the appellant's participation in the shooting in question.
The appellant purchased shells for the gun used to kill the victim. The appellant called the victim and arranged for him to meet her at the place where he was shot. She then drove her vehicle to the scene. Ms. Hamilton stated that the appellant suggested killing the victim and helped her drag his body across the road following the shooting. She participated in efforts to conceal the crime by hiding the murder weapon and washing her car which had been splattered with the victim's blood. See Gwin v. State, 456 So.2d 845 (Ala.Crim.App. 1984);Block v. State, 455 So.2d 1011 (Ala.Crim.App. 1984). There was ample evidence from which the jury could find this appellant guilty as charged. Johnson, supra.
The appellant contends that her conviction of manslaughter is inconsistent with the State's complicity-based theory of criminal liability. She argues that a conflict exists between the intent requirements since manslaughter involves reckless conduct whereas complicity requires the specific "intent to promote or assist" in the commission of an offense. The appellant's failure to object to the trial judge's jury instructions including manslaughter as a lesser included offense precludes our consideration of this issue. Ex parteWashington, 448 So.2d 404 (Ala.), on remand, 448 So.2d 409
(Ala.Crim.App. 1984). Section 12-16-13, Code of Alabama 1975.
Even had this issue been properly preserved for our review, we would have held the appellant's contention to be without merit. A defendant charged with murder on a complicity theory may properly be convicted of manslaughter. State v. Coleman, 5 Port. 32 (1837); Morris v. State, 146 Ala. 66, 41 So. 274
(1906). See Stephenson v. State, 27 Ala. App. 122, 166 So. 620
(1936); Busby v. State, 412 So.2d 837 (Ala.Crim.App. 1982). See generally, 95 A.L.R.2d 175 (1964). Cf. Howell v. State,431 So.2d 1328 (Ala. 1983) (conviction of criminally negligenthomicide held inconsistent with criminal liability based on complicity); Daggit v. Commonwealth, 314 Ky. 721, 237 S.W.2d 49
(1951); State v. Robinson, 12 Wn. 349, 41 P. 51 (1895).
 III
The appellant contends that Debbie Hamilton's testimony at trial, wherein she stated that she gave some of the money taken from the body of the victim to this appellant, was perjured. She bases her contention on a letter written to Tommy Hamilton by Ms. Hamilton on October 26, 1985, the day the appellant was convicted.
The relevant portion of the letter reads,
 "Tommy I'm sorry I went states but I thought it was the best thing I could do . . . They didn't have shit on Janice but they had a lot on you and me, you said you shot him and they got all that money off of me so I had to make sure I would get out of prison someday!" (R. 2218-19)
The appellant contends that the trial judge erred in overruling her motion based on these grounds. We disagree.
 "In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege and prove (1) that the testimony was perjured; (2) that it was on a matter of such importance that the truth would have prevented a conviction; (3) that the State had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue. Summers v. State, 366 So.2d 336 (Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979); Pennington v. State, 420 So.2d 845 (Ala.Cr.App. 1982); Phelps v. State, 439 So.2d 727 (Ala.Cr.App. 1983); Waldrop v. State, 448 So.2d 490 (Ala.Cr.App. 1984). This is in addition to meeting the requirements for establishing the right to a new trial on the basis of newly discovered evidence. Barnes v. State, 415 So.2d 1217 (Ala.Cr.App. 1982)."
Baker v. State, 477 So.2d 496, 504 (Ala.Crim.App. 1985). *Page 60 
The appellant has failed to satisfy her burden of proof. We do not consider the statements in the letter to be "in conflict" with the trial testimony of Ms. Hamilton as the appellant alleges. The appellant's strained interpretation of the language in this letter is hardly sufficient to prove perjury.
The appellant's contention fails with respect to the third requirement as well. She has completely failed to offer any substantial proof that the State had knowledge of any alleged perjury. Furthermore, it is clear that "the truth", i.e., that Ms. Hamilton did not give any of the money to the appellant, would not have prevented the appellant's conviction. This evidence was not, as alleged by the appellant, the sole evidence of her complicity in the killing. Thus, we find the appellant's contentions to be without merit.
 IV
The appellant contends that no probable cause existed for her warrantless arrest which was made pursuant to a police radio bulletin. She argues that the search of her purse was, therefore, illegal and that testimony concerning the evidence found therein, i.e., the money, should not have been admitted at trial We disagree.
 " 'Where a law enforcement officer has received information from a credible source leading to a reasonable belief on his part that an individual has committed a felony, it is not necessary to obtain a warrant in order to effect the arrest of that person. Burrow, supra. Gilbreath v. State, 54 Ala. App. 676, 312 So.2d 81 (1975); Culbert v. State, 52 Ala. App. 167, 290 So.2d 235 (1974). Title 15, Section 154, Code of Alabama 1940, Recompiled 1958 (see Code of Alabama 1975, §§ 15-10-3).
 "A law enforcement officer may have probable cause for a warrantless arrest based on the identification or description of the suspect or his motor vehicle without knowing the identify of the person to be arrested. Sexton v. State, Ala.Cr.App. 349 So.2d 126 (1977); also Oatsvall v. State, 57 Ala. App. 240, 327 So.2d 735 (1975), cert. denied, 295 Ala. 414, 327 So.2d 740 (1976); Jackson v. State, 55 Ala. App. 334, 315 So.2d 131, cert. denied, 294 Ala. 760, 315 So.2d 136, cert. denied, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 132 (1975). The arresting officer may base his arrest on an official description of the suspect or his motor vehicle as where he receives information from a police radio bulletin or report describing the person or vehicle. Brown v. State, 55 Ala. App. 615, at 619, 318 So.2d 311 (1975); McClendon v. State, Ala.Cr.App., 341 So.2d 174 (1976), writ quashed, Ala., 341 So.2d 178 (1977). The identification or description of an offender or a motor vehicle may also be supplied to the police by the victim of or witness to an offense as well as by an informer. Turk v. State, 53 Ala. App. 106, 298 So.2d 37
(1974); Burrow v. State, 55 Ala. App. 24, 312 So.2d 596 (1975); Thomas v. State, 50 Ala. App. 227, 278 So.2d 230 (1973); Smith v. State, 51 Ala. App. 349, 285 So.2d 512, cert. denied, 291 Ala. 798, 285 So.2d 515 (1973).' Campbell v. State [354 So.2d 325
(Ala.Cr.App. 1977)] supra."
Traylor v. State, 439 So.2d 178, 181-182 (Ala.Crim.App. 1983).
It is clear that in the present case probable cause existed and the appellant's arrest was, therefore, valid. Probable cause stemmed from a positive identification of the appellant and her accomplices as they were leaving the scene of the crime in the appellant's automobile. A detailed description of the automobile and its occupants was broadcast over a police radio. We hold that the identification of this appellant and her automobile and the subsequent transmission of this information through law enforcement channels was sufficiently reliable and resulted in the appellant's valid arrest. Traylor, supra; See Ala. Code § 15-10-3 (1975).
Furthermore, following the appellant's arrest, law enforcement officers were authorized to conduct a search of her purse. Such searches have been consistently upheld when incident to a valid arrest and/or as part of inventory procedures conducted *Page 61 
prior to the arrestee's incarceration. See McCants v. State,459 So.2d 992 (Ala.Crim.App. 1984); Illinois v. La Fayette,462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); UnitedStates v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427
(1973); Lippold v. State, 365 So.2d 1015 (Ala.Crim.App. 1978), cert. denied, 365 So.2d 1022 (Ala. 1979). Based on the foregoing, we find no basis of error on the trial judge's part in allowing the admission of this evidence at trial.
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., concurs in the result only.