318 So.2d 311

**Roni BROWN**

v.

**STATE.**

**3 Div. 353.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

Benjamin E. Pool, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Eric A. Bowen, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of grand larceny and sentenced to ten years imprisonment in the penitentiary. Appointed counsel represented him at arraignment and throughout the trial. He pleaded not guilty. After conviction he was furnished a free transcript and trial counsel was appointed to represent him on appeal.

The facts relating to the theft are not in dispute. Appellant offered no evidence in his behalf.

At approximately 12:30 p. m. on August 16, 1972, two cases containing 14 diamonds of the aggregate value of $23,757.50, the personal property of Capitol Wholesale Distributors, Inc., a corporation, located on the Southern Boulevard in Montgomery, Alabama, were taken from the store by two white men.

Mrs. Susie Faile testified that she went to the jewelry department in the store on August 16, 1972, to return a ring and get a refund. While an employee went to get the manager to approve the refund, she saw two men standing at the jewelry counter looking at a catalogue. There were no other employees in the immediate vicinity of the jewelry counter. She saw the taller man raise the glass on the diamond case and the short man reach in the display case and take two diamond trays. The short man gave the tall man one tray and he put it inside his jacket and the short man kept the other tray. She saw them put the top down on the diamond display case. She then saw them turn around and walk a few steps toward the door and then they ran out of the store. Mrs. Faile called the saleslady and told her what she had seen. Mrs. Faile remained in the store until the officers arrived and she gave them a description of the two men.

She was recalled later in the trial and was shown state's exhibit no. 16, which was a photograph of a line-up of six suspects and she positively identified the tall man as the one who lifted the glass from the counter while the short man took the two trays of diamonds. He was the fifth man in the line-up looking from the left to the right. She further testified that the man on the far left—the first man in the line-up—(the defendant on trial) resembled

the man who took the diamond trays from the case, but she could not positively identify him.

Mrs. Betty Mitchell testified that she was employed by Capitol Jewelers and Distributors on August 16, 1972, and had been so employed for eight years. She was employed to work in the jewelry and diamond department. She testified that she remembered Mrs. Faile coming into the store to return a ring on that date, and she saw appellant in the store at that time. She said he was in the vicinity of the diamond department and remained there for a considerable length of time, that he was with the taller man and they were looking through a catalogue.

This witness further testified that the last time she observed appellant he was looking at rings on the diamond counter. She said the diamonds were taken at approximately 12:30 p. m. because ten minutes before that time she had observed the diamonds. During her dealings with Mrs. Faile she had gone to get the manager to approve the refund to Mrs. Faile and did not see the actual theft. She further testified that the top of the counter was glass and could be moved even though the counter was locked. She saw one end of the top sticking up and saw that two diamond trays were missing. She immediately reported to the manager that the diamonds had been stolen.

Mr. Christopher Filley testified that he was an employee of this store on August 16, 1972, but he left the store at 12:30 p. m. to buy a newspaper. He returned to the store at approximately 12:35 p. m. and saw two men running out of the door. Mr. Filley positively identified appellant as one of them and stated they ran to a 1970 or 1971 Cadillac, got in and drove away. He said the taller man was wearing red knit pants and a striped shirt and tie. He saw a black case in the hands of one of the men just like the cases his employer uses to display diamonds. He saw the car appellant was driving again at 2:00 p. m.

the same day at the police station, and he identified the two men later in a line-up. He had observed appellant in the store from 9:00 o'clock a. m. until shortly before the theft at 12:30 p. m. on August 16, 1972.

This witness further testified that the short man had dark black hair and was a conservative neat cut; that the tall man had brown hair. He described the Cadillac as having a pale yellow body with a beige vinyl top.

Mr. Arthur Glenn Sexton testified that he was employed at Capitol Jewelers and Distributors as manager of the diamond department and was on duty on August 16, 1972. He further testified that he saw appellant, Roni Brown, on several occasions that day in the vicinity of the diamond department for approximately an hour or an hour and a half before the diamonds were stolen. He stated that a taller man was with appellant, and that he last saw them about 12:15 or 12:20 p. m. He said the tall man asked for a catalogue, and Mr. Sexton asked him if he could help him. He gave him the catalogue at the diamond counter. He spoke to appellant several times but did not see him take the jewels. Upon being notified that the diamonds were missing, he conducted an inventory of the department within thirty minutes and found two diamond trays were missing. He went into considerable detail in describing the missing diamonds and the value of each diamond. He was shown state's exhibit no. 15 and testified this was a true and accurate photograph of the stolen diamonds. He then identified various metal tabs as being the tabs that were attached to the stolen diamonds as shown by state's Exhibits Nos. 1–14. He further testified that he saw the diamonds and tabs at the police department on the date of the theft, and further identified them as the same tabs which had been attached to the diamonds stolen from his employer on August 16. The diamonds were surrendered to him by the police department on the afternoon of August 16.

The Montgomery Police Department sent out a radio dispatch giving a description of the automobile stating that it was occupied by two men, one tall and one short, and they were suspects in a diamond theft from Capitol Wholesale Distributors in Montgomery a short time prior to the dispatch.

Mr. C. E. Ward, a state trooper, picked up the radio dispatch while on patrol in Autauga County. He first saw appellant in the Cadillac automobile when he got out of the car at a service station at the intersection of Interstate 65 and U.S. Highway 31. He had a passenger with him who was much taller and he subsequently learned that his name was Crane. Mr. Ward walked up to appellant and told him he had a description of the car and that it had been involved in a theft from a jewelry store in Montgomery. The time was about one o'clock on the afternoon of August 16, 1972,—30 minutes after the larceny.

From the record:

"Q. All right. What did you then do?"

"A. I went back and radioed or called headquarters and asked them to give me another description . . a full description of the occupants of the car. The type of clothes, and so forth. They checked it out and called and got a good full description, and, of course, these two subjects fit the description, and I told them that we would have to bring them back to Montgomery."

Appellant was searched at the scene and Mr. Ward found fourteen diamond rings in a paper bag stuck underneath his belt in the back. The officer took custody of the diamonds and kept them in his exclusive possession and control until he turned them over to a city detective with the Montgomery Police Department. At trial he identified the metal tabs that were attached to the rings when he removed them from appellant's person.

On cross examination, this witness said the Cadillac was a light yellow with a white top. That he frisked both men to see if they were armed and he did not find any weapons. He searched the car and found no weapons. He further testified that appellant did not deny taking the jewelry but did say that he had not been to Montgomery.

Mr. Ward viewed the line-up at the police headquarters and positively identified appellant and his companion in the line-up and also made a positive in-court identification of appellant.

The city detective to whom Mr. Ward gave the fourteen diamonds removed from the person of appellant testified that he gave appellant his rights by reading them to him from a *Miranda* card carried by all officers of the Montgomery Police Department. He then asked appellant if he understood his rights and he said he did. He was asked if he wanted to make a statement and appellant replied:

"I'm not going to tell you anything about it. There's no need in me giving you any statement. I know y'all got us on this case."

This witness was present when a photograph was made of the fourteen diamonds. After the proper predicate was laid this photograph was admitted in evidence over appellant's objections that the diamonds were the best evidence. This witness removed the metal tabs from each diamond and was present when photographs of these tabs were made. He identified these at trial and after the proper predicate was laid, state's exhibits nos. 1 through 14 were admitted in evidence over appellant's objections.

■ This detective was present at the line-up and at the time a photograph of the line-up was made. He identified appellant as number one in the line-up and identified Ronald Crane as number five in the line-up. The proper predicate was laid and this

photograph was admitted in evidence over appellant's objections.

At the conclusion of the state's case appellant made a motion to exclude the state's evidence. This motion was overruled. He also requested the affirmative charge and it was refused.

 A police radio message as to a felony involving fleeing suspects is sufficient to support a lawful arrest. *Spurlin . v. State,* 46 Ala.App. 485, 243 So.2d 758; *Rutherford v. State,* 48 Ala.App. 289, 264 So.2d 210; *Fennell v. State,* 51 Ala.App. 23, 282 So.2d 373; *Daniels v. State,* 290 Ala. 316, 276 So.2d 441; *Turk v. State,* 53 Ala.App. 106, 298 So.2d 37.

We are unwilling to hold that the evidence in this case is insufficient to establish the essential elements of the crime for which appellant stands convicted. The *corpus delicti* is a fact, proof of which may be shown by circumstantial evidence, and if there is a reasonable inference to prove its existence, the court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. *Hines v. State,* 260 Ala. 668, 72 So.2d 296; *Burleson v. State,* 52 Ala.App. 399, 293 So.2d 317.

The photographs of the stolen items were properly admitted in evidence. *Burleson v. State,* supra.

The rule is best stated in *McKee v. State,* 253 Ala. 235, 237–238, 44 So.2d 781, 783:

"' * * * (T)he art of photography is generally relied on for depicting the resemblance of persons, objects, things and places and when verified by evidence, extrinsic of the photographs, going to show that they correctly depict the thing or object at the time they were taken, photographs are admissible in evidence in a criminal prosecution, if they tend to shed light on, strengthen or illustrate the truth of other testimony offered by the prosecution. * * *'"

The fact the photographs are cumulative of other evidence offered by the prosecution does not render them inadmissible. *King v. State,* 43 Ala.App. 628, 198 So.2d 308.

Overruling appellant's motion to exclude the state's evidence was not reversible error where the evidence was sufficient to submit the question of his guilt to the jury. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

The trial court gave at the request of appellant fourteen (14) written charges and refused only the charges that were affirmative in nature. There was no error in refusing the affirmative charges.

We have carefully searched the record for errors injuriously affecting appellant's substantial rights and have found none. The judgment is affirmed.

Affirmed.

All the Judges concur.