TYSON, Judge.
The appellant, Nathaniel Douglas, was indicted by the grand jury of Jefferson County for the robbery of one William A. Harrison by taking some $48.00 in currency from his person and against his will, etc. The jury found the appellant guilty as charged and fixed his punishment at ten years imprisonment in the penitentiary. The trial judge set sentence in accordance with the verdict.
William A. Harrison, Jr., testified that, on the evening of February 11,1977, he was working at a U-Totem convenience store in Birmingham. The appellant entered the store about 9:45 p. m., pulled a ski-mask over his face, brandished a pistol, and demanded money (R. pp. 10-13). Harrison maintained that he saw the appellant’s face before he pulled on a ski-mask (R. pp. 12, 18). After handing over some $45.00 to $50.00, Harrison was instructed to lie down behind the counter and was told that the robber’s partner would return for the “big bills” (R. p. 13). Shortly thereafter, Harrison heard gunshots, and he called the police (R. p. 19). Harrison indicated that he did not remember giving a description to the police that night (R. pp. 71-77). Fifteen to twenty minutes later, the police took Harrison to see a suspect they had apprehended (R. pp. 40-43). At that time, Harrison identified the suspect as the person who had committed the robbery (R. pp. 46-47). The suspect was handcuffed when shown to Harrison, and no other suspects were present (R. p. 43).
Under voir dire examination, Harrison described the perpetrator as standing approximately six feet tall, weighing about 130 to 140 pounds, and wearing a goatee and mustache. Harrison said the robber was wearing a dark brown pullover shirt, khaki pants, a dark leather jacket, and a toboggan (R. pp. 16-17). In court, Harrison identified the appellant as the person who committed the robbery (R. p. 15). He testified that State’s Exhibit One looked like the ski-mask used in the robbery (R. p. 199).
On the night of the robbery, Officers Frederick Lee Fulgham and Kenneth W. Williams of the Birmingham Police Department were involved in a stake-out of the U-Totem store (R. pp. 24, 138). Officer Fulgham stated he observed the appellant approach and enter the store (R. pp. 24-25, 118). He was uncertain, however, about whether or not he saw facial hair on the appellant at this time (R. pp. 26, 36, 128-130, 140-141). Fulgham recalled that, when the appellant left the store, he pulled the ski-mask, which was over his face, onto the top of his head and tucked something down the front of his pants (R. pp. 27,119). At that point Fulgham and his partner identified themselves as police officers and several times ordered the appellant to stop (R. pp. 27, 120). The appellant ran to a parked car and shots were exchanged as the appellant drove away (R. pp. 28, 136-137). Fulgham and his partner alerted other police units as to what had transpired (R. p. 122) and then attempted to follow. They found the car abandoned a few blocks away on a dead end street. The car had three bullet holes in it (R. p. 127). Fulgham testified that he did not directly participate in the arrest of the appellant (R. p. 33). At trial, Fulgham identified the appellant as the person he saw go into the U-Totem store on the night of February 11, 1977 (R. p. 125).
Officer Donald H. Boner testified that, on the night of the robbery, he was sent to bring William A. Harrison to the scene of *375 the abandoned getaway car because the police had a suspect in custody there (R. p. 40). Upon arrival at the scene, the handcuffed suspect (appellant) was shown to Harrison, and he identified the suspect as the person who had robbed him earlier that night (R. p. 47).
Officer Kenneth W. Williams was Officer Fulgham’s partner on the night of the robbery (R. p. 81). Officer Williams’ testimony was substantially the same as that of Officer Fulgham. Williams, however, remembered seeing a mustache and goatee on the appellant before the robbery (R. p. 91). Furthermore, he said that some twelve one-dollar bills were found scattered in and around the abandoned automobile (R. p. 92). He also identified the appellant in court as the person he saw and chased on the night of the robbery (R. p. 94). Finally, Williams identified State’s Exhibit Two as a photograph of the abandoned getaway car and State’s Exhibit Three as a photograph of the handcuffed suspect (appellant) taken in the vicinity of the abandoned car (R. p. 106).
Officer Jerry Frazier of the Birmingham Police Department testified that, on the night of the robbery while on patrol (R. p. 143), he got a call to proceed to a residential address to look for a prowler (R. p. 157). When he arrived at that address, he apprehended a black male (appellant) who was on the front steps of the residence (R. p. 144). He told the black male to get on his stomach. He then placed handcuffs on him and put him in the back seat of the patrol car (R. p. 145). Officer Frazier testified that the suspect was soaking wet at the time and had mud all over his pants and shoes (R. p. 146). After the suspect was placed under arrest for suspicion of prowling and suspicion of robbery, Officer Frazier conducted a pat down search of his person (R. p. 161). Frazier took the suspect to where the getaway car had been abandoned and showed the suspect to the store manager (R. p. 147). At this time, Frazier conducted a thorough search of the suspect’s person and found a set of car keys and some money (R. pp. 147,161,164). Officer Frazier successfully started the getaway car with keys he had taken from the suspect (R. pp. 147-148,162,167). Frazier said he gave the keys and money to the evidence technician (R. pp. 148, 169). At trial, Officer Frazier identified the appellant as the person he had arrested and searched that night (R. p. 156).
Officer Roger D. Harrison of the Birmingham Police Department testified that, on the night of the robbery, he received a call to go to a residential address (R. p. 177). When he arrived, he saw Officer Frazier conducting a pat down search of the appellant (R. pp. 177-178). Officer Harrison and several officers searched the wooded area behind the residence and found a red ski-mask, a black leather jacket, and some currency (R. p. 182). Officer Harrison identified State’s Exhibit One as the ski-mask he found that night (R. p. 184). He identified State’s Exhibit Six as the black jacket he found that night (R. p. 186). Officer Harrison said he turned the above named items over to the evidence technician at the Ens-ley Precinct (R. p. 187).
The parties stipulated that the appellant had $123.00 in currency in his possession at the time of his arrest (R. p. 204).
At the close of the State’s case, appellant made a motion to exclude the State’s evidence, which was overruled.
No evidence was presented for the defense at trial.
I
Appellant contends that the identification of appellant, made by the victim of this robbery shortly after the robbery occurred, was unnecessarily suggestive and conducive to irreparable mistaken identification and, therefore, it was error for the trial court to overrule a motion to suppress this evidence.
The appellant claims that Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), mandate a reversal of his conviction. We do not agree.
*376 In Denson v. State, Ala.Cr.App., 348 So.2d 1139 (1977), this Court held that a “one-man showup” identification of the defendant, conducted within forty-five minutes of the robbery, was “good police work” and not so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process. Id. at 1140. See also cases cited therein.
In the present case, the victim, Mr. Harrison, saw the appellant’s face before he pulled the ski-mask down (R. pp. 12, 18), and the subsequent one-man showup occurred within twenty minutes of the robbery.
In Cornelius v. State, 49 Ala.App. 417, 272 So.2d 623 (1973), Judge Harris, in quoting from Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968), expressed the rationale for the rule as follows:
“[T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh.” Id. 132 U.S.App.D.C. at 38, 405 F.2d at 1106.
The appellant’s motion was properly denied.
II
Appellant next contends that the failure of the prosecution to trace the possession of the ski-mask from the evidence technician to the courthouse broke the “chain of custody” and therefore the ski-mask should not have been admitted into evidence.
Judge Bowen, in Sexton v. State, Ala.Cr.App., 346 So.2d 1177 (1977), set forth that to admit an object into evidence against a claim that “an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain.” Id. at 1180. See cases cited therein.
In the case at bar, Officer Harrison testified that the ski-mask was the one he had found, that it was in substantially the same condition, and that it had the same coloring, design, and holes as when he found it (R. pp. 184, 185). Therefore, the admission of the ski-mask into evidence was not error.
Ill
Appellant’s final contention is that, since no grounds existed which would support the lawful arrest of appellant, any evidence found while searching appellant would be inadmissible.
We disagree with appellant’s contention that no probable cause existed which would support a lawful arrest.
This Court in Brown v. State, 55 Ala.App. 615, 318 So.2d 311 (1975), noted that “[A] police radio message as to a felony involving fleeing suspects is sufficient to support a lawful arrest.” Id. at 619; 318 So.2d at 314. See cases cited therein.
In the present case, the arresting officer, prior to the arrest, had received a radio message informing him that a robbery had been committed and giving him a description of the suspect’s clothing (R. pp. 158, 159). Thus, the arresting officer did have probable cause to arrest the appellant, and any evidence found on the appellant incident to the lawful arrest was therefore admissible.
We find no error, and this cause is
AFFIRMED.
All the Judges concur.
BOWEN, J., in result only.