The appellant, James M. Cotton, opened a checking account with the Slocomb National Bank with a ten dollar deposit. The account was opened in the name of Wilbur Thompson, who was a former employee of the appellant and for whom he possessed some identification. He then proceeded to write checks for various purchases at local businesses; it was ultimately determined that the appellant had written checks against the ten dollar deposit for the amounts of $152, $200, $400.92, $2,141 and $146. These checks were not honored because of the insufficient account balance. Store employees who had observed the appellant noted that he drove a light-colored Mercedes automobile. The bad checks had been written during a five-week time period. Four days after the last check had been uttered, the automobile was spotted in front of a store in Dothan, and two police officers were dispatched to the store to find Wilbur Thompson. The appellant matched the description of the suspect and the officers asked him for some identification. He took them to his car, opened the glove compartment and produced an identification as James M. Cotton. A radioed computer check with the National Crime Information Center (NCIC) disclosed that the State of Hawaii had issued an outstanding arrest warrant for James M. Cotton. He was placed under arrest and the contents of his billfold and car were inventoried. Discovered in the car were the Wilbur Thompson identification papers used to open the checking account and used when writing the checks, along with the Slocomb National Bank check book.
 I
Contrary to the appellant's contention in his brief, the officers did not arrest him solely because of the information from the NCIC, but also because he matched the description of the bad check artist operating in Dothan. A law enforcement officer may have probable cause for a warrantless arrest based on the information or description of a suspect or his motor vehicle without necessarily knowing his true identity. Sextonv. State, 349 So.2d 126 (Ala.Cr.App. 1977); Brown v. State,55 Ala. App. 615, 318 So.2d 311 (Ala.Cr.App. 1975). *Page 415 
The matter of investigatory stops was addressed by the United States Supreme Court in United States v. Hensley, ___ U.S. ___,105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The court held that the ability to briefly stop a person suspected of involvement in a past crime to ask that person questions or check identification, promotes the strong government interest in solving crimes and bringing offenders to justice. The court said, "The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes." Id.,105 S.Ct. at 681. The case goes on to hold that a bulletin that a person is wanted will justify a Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), investigatory stop if the bulletin was "issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense." Hensley, 105 S.Ct. at 682. This court has likewise held that information received by officers over the radio in regard to a suspect constitutes sufficient cause to make an investigatory stop to question the suspect about suspected criminal activity. Kemp v. State, 434 So.2d 298
(Ala.Cr.App. 1983); Crawley v. State, 440 So.2d 1148
(Ala.Cr.App. 1983). Therefore, because he matched the description of the individual recently issuing bad checks, the police officers acted properly in questioning the appellant and asking him to produce some identification. The subsequent NCIC information was, in and of itself, sufficient information to amount to probable cause to arrest the appellant. United Statesv. McDonald, 606 F.2d 552 (5th Cir. 1979); Daniels v. State,290 Ala. 316, 276 So.2d 441 (1973).
We find that the arrest of Cotton was a lawful arrest and that evidence produced as a proximate result of that arrest was properly not suppressed. It appears to us that the officers in this case could have lawfully arrested Cotton based on either the bad check charges or the outstanding arrest warrant reported by the National Crime Information Center.
 II
Cotton next contends that he was denied effective assistance of counsel. He had three different lawyers appointed to him by the court at the trial stage and now enjoys a fourth appointed counsel on appeal. Appellant, no stranger to the system, succeeded in having difficulty with each appointed lawyer and further, sued one of his lawyers, along with the district judge and the circuit judge. Appellant initially contends that he was denied effective assistance because he did not have a preliminary hearing. It appears that when the court learned that he owned property, the court dismissed his first appointed counsel as improvidently appointed because of the filing of a false pauper affidavit by the appellant. Another attorney was not appointed until arraignment, so that failure to secure a preliminary hearing did not result from inadequacy of any counsel. Appellant's right to a preliminary hearing terminated when the grand jury indicted him. Elmore v. State,445 So.2d 943 (Ala.Cr.App. 1983).
To demonstrate ineffectiveness of counsel, the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors the proceeding would have been different." Because that standard is based on an interpretation of the United States Constitution, it establishes the minimum standard for determining whether counsel was ineffective.
Cotton contends that one of his attorneys fell below the minimum standard in that he failed to obtain the attendance of witnesses from California, and furthermore, he failed to even investigate the prospective witnesses. The witnesses were to testify regarding Cotton's past business and financial condition and as character witnesses. From what we understand, the testimony of these witnesses would not be *Page 416 
material in this case. Therefore, appellant Cotton suffered no injury by these witnesses not being brought to Alabama to testify in this case.
Appellant also argues that his second attorney was not removed fast enough and the court erred in failing to grant a continuance to his third attorney. We stated in Tudhope v.State, 364 So.2d 708 (Ala.Cr.App. 1978):
 "We hold that the question of removing a court appointed counsel and appointing another counsel for the appellant was a matter within the discretion of the trial court. That considering the conduct of the appellant, the defense of the appellant in the trial court as shown by the record, the trial court did not abuse its discretion in overruling appellant's request to discharge his court appointed counsel and appoint him another counsel."
Granting a continuance is always discretionary with the court. Watson v. State, 389 So.2d 961 (Ala.Cr.App. 1980). This is true even where an alleged lack of preparation by counsel is the result of the refusal of the accused to cooperate with counsel. Godfrey v. State, 383 So.2d 575 (Ala.Cr.App. 1980);Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973).
We do not find ineffective assistance of counsel based on the appellant's contentions in this case.
 III
Appellant contends that the court erred in permitting the district attorney to question him during cross-examination concerning prior bad acts. Most of the questions asked by the district attorney concerned prior bad acts involving moral turpitude or outstanding warrants for felonies. These questions were answered in the negative. A negative answer to a question asked on cross-examination, even if the question itself is improper, cannot result in harm to the appellant. Barton v.State, 376 So.2d 756 (Ala.Cr.App. 1979). On the other hand, it has been held that placing prejudicial false allegations before a jury by cross-examination without being prepared to prove them is reversible error. United States v. Brown, 519 F.2d 1368
(6th Cir. 1975). Our state has adopted this principle in Youngv. State, 363 So.2d 1007 (Ala.Cr.App. 1978), and Wysinger v.State, 448 So.2d 435 (Ala.Cr.App. 1983).
Introduction of prior acts is not admissible if the only probative function of such evidence is to show a defendant's bad character, or inclination, or propensity to commit the type of crime for which he is being tried. C. Gamble, McElroy'sAlabama Evidence § 69.01 (1) (3d ed. 1977). We have held that the evidence of such prior bad acts of a criminal defendant is "presumptively prejudicial" to the defendant because "[i]t interjects a collateral issue into the case which may divert the minds of the jury from the main issue." Ex parte Cofer,440 So.2d 1121, 1124 (Ala. 1983). The district attorney asked the defendant whether he had a bank bag full of keys to rental cars; whether he stole the Mercedes automobile; whether he knew the Mercedes had been stolen at the time he gained possession of it; whether he was stealing Mercedes-Benz cars in Hawaii with one Cliff Danhauer and "shipping them to the United States"; whether he was presently charged with four counts of stealing cars in Hawaii; whether he was presently charged with breaking into the automobile of Wilbur Thompson and stealing his identification in Honolulu, Hawaii; whether he was presently charged with theft of Wilber Thompson's automobile; whether he was "running [from] four warrants for theft of vehicles from Honolulu, Hawaii and a $45,000 bond"; and whether there was a hold on him in Honolulu, Hawaii. At one point, defense counsel objected to a cross-examination question, saying unless the district attorney "can go further and show or he expects to put on testimony that this man was engaged in some type of theft of rental cars or something of that nature, I —" when the prosecutor interrupted, saying, "I can ask any questions I want to." That objection was overruled, however, later *Page 417 
when the prosecutor asked the appellant, "You are presently charged with four counts of [auto theft] in Hawaii?" the appellant's objection was sustained. In his summation, the district attorney made the following statement to the jury:
 "The other thing is, the business about the keys and everything. He didn't deny those keys were in that car. He just said they weren't in there. And so you can't bring somebody back to rebut what he has to say. Rebut the keys, rebut the bill of sale. He doesn't deny any of that stuff.
 "About the other stuff, it's a long way to Hawaii. It's a long way to Arizona and that's all I can say about that."
No factual predicate was ever developed by any witness for such questioning, nor was it ever shown why the allegations were relevant and that their probative value outweighed their prejudicial effect. See Spellman v. State, 473 So.2d 618
(Ala.Cr.App. 1985). This line of questioning is so presumptively prejudicial that we cannot say whether the jury convicted the defendant for the offenses with which he was charged, or for the offenses of which he was accused by the district attorney. The state concedes that "most of the questions asked by the prosecutor was [sic] answered in the negative which was later proved to be true." This, as best as we can understand, is an admission that the accusations of the prosecutor were groundless. For these reasons, this case must be reversed and remanded for a new trial.
 IV
Appellant contends that the court erred in its failure to give his charge no. 4, which suggests that, if the jury finds that although he did not intend for the check to be honored when it was presented, he meant to have it eventually paid, then the jury they could not convict him. This charge is misleading and confusing. Failure to give this instruction as to each count was not error. Phillips v. State, 409 So.2d 918
(Ala.Cr.App. 1981). To be reversible error, counsel must have stated a specific ground for his objection to the court's refusing to charge as requested. Allen v. State, 414 So.2d 989
(Ala.Cr.App. 1981). This matter was not preserved for our review.
 V
Cotton contends that his prior felony convictions were improperly considered in sentencing him under the Habitual Felony Offender Act. The prior felony convictions were for violation of the Dyer Act for interstate transportation of stolen property and a conspiracy to commit an offense or to defraud the United States itself, specifically, embezzling public monies. 18 U.S.C. § 371 and § 2312, respectively.
The attorney general argues that the Alabama statute on criminal conspiracy is a counterpart to § 312 of 18 U.S.C. conspiracy to commit any offense against the United States or to defraud the United States or any agency thereof. He also argues that our § 13A-8-20, Code of Alabama 1975, proscribing the bringing of stolen property into the state is the counterpart of the Dyer Act. Alabama Temporary Rules of Criminal Procedure, Rule 6 (b)(3)(iv), provides the following definition of a "felony" for purposes of sentencing under the Habitual Felony Offender Act:
 "Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constituted a felony under Act 607, § 130 (4), Acts of Alabama 1977, p. 812 (§ 13A-1-2 (4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980."
Although appellant contends that a majority of state courts have held that their states do not have a counterpart statute to the Dyer Act, we find that the Alabama statute proscribing the bringing of stolen motor vehicles into this state is a counterpart to the Dyer Act. A conviction under the Dyer Act, therefore, may be used for *Page 418 
sentence enhancement under the Alabama Habitual Felony Offender Act.
The conspiracy to defraud the United States, 18 U.S.C. § 2312, apparently dealt with the conversion of money and property of the United States. It is suggested by appellant that the conviction related to black marketeering in stolen property of the United States during Cotton's return to Vietnam as a civilian. However, there is no evidence of this. Since there is an equivalent statute in Alabama regarding conspiracy to defraud, we hold that the prior felony as described in18 U.S.C. § 2312 may also be used to enhance punishment under the Alabama Habitual Felony Offender Act.
This case is reversed and remanded because of the matters addressed in III above, for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.