William Brinks was convicted of pharmacy robbery, in violation of § 13A-8-51, Code of Alabama (1975) and sentenced, as a habitual offender, to life imprisonment without parole. He raises five issues on appeal.
On March 14, 1985, a man entered Chapman's Pharmacy in Mobile and forced the pharmacist, at gunpoint, to fill a pillowcase with Schedule II narcotics. The robber wore a stocking mask and neither the pharmacist nor the store clerk could identify him. After the assailant left the store, both the pharmacist and the clerk heard the noise of a car or truck with a loud muffler and squealing tires. The pharmacist immediately reported the robbery, but was unable to describe the robber or the getaway vehicle.
Alfred Pearce was standing across the street and saw a white Chevrolet pickup truck with a loud muffler drive by the pharmacy, turn around, drive by again, and then park in front of the store. A few moments later he saw the same truck "taking off I think as fast as it would go. And when it took off the tailgate popped loose and dropped down." Pearce saw two people in the truck, "a big guy and a little guy. Both of 'em white." He described the vehicle to police as a "white '69 or '70 Chevrolet pickup truck," and identified State's exhibit 13 as a photograph of the same truck he saw at Chapman's Pharmacy the day of the robbery.
A police radio dispatch reported the robbery and described the vehicle as a "white longbed, step-side Chevrolet pickup truck," "approximately a '70 or '71 model," "with the tailgate down." Fifteen minutes after hearing the broadcast, Corporal William Brokaw, who was on patrol in the vicinity of the robbery, spotted a truck matching the description given on the radio, and followed the vehicle to a convenience store approximately three and one-half to four miles away from Chapman's Pharmacy. The truck pulled in at the convenience store, and two white males got out of the vehicle. When Officer Brokaw saw that the man leaving the driver's side matched the description of one of the suspects broadcast over the radio, "a large heavy set white male, dark complected with a large stomach," he held the two men at gunpoint until assistance arrived. The suspects were given their Miranda rights and placed in a patrol car, and the truck was searched.
 I
The defendant challenges the admission into evidence of his confession and the controlled substances found during a search of the truck in which he was riding, claiming that both were the fruits of an illegal arrest. Specifically, he contends that the radio, *Page 1313 
dispatch on which the police officers relied in following his truck and later apprehending him did not provide probable cause for his arrest.
Whether a warrantless arrest is constitutionally valid depends on "whether, at the moment the arrest was made, the officers had probable cause to make it." Beck v. Ohio,379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); Sexton v.State, 349 So.2d 126 (Ala.Cr.App. 1977). See § 15-10-3(3), Code of Alabama (1975). Probable cause cannot be satisfied on the basis of a radio dispatch alone. Ex parte Paschal,365 So.2d 681, 682 (Ala. 1978); Owens v. State, 51 Ala. App. 50,282 So.2d 402, cert. denied, 291 Ala. 794, 282 So.2d 417 (1973). SeeWhiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560,568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971). "While the arresting officers may rely on radio broadcasts 'the subsequent determination by any court as to probable cause must necessarily turn on all the circumstances giving rise to the police dispatch.' " Rudolph v. State, 371 So.2d 962, 964
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. AttorneyGeneral, 371 So.2d 965 (Ala. 1979) (quoting Owens v. State,51 Ala. App. at 61, 282 So.2d at 413).
The circumstances underlying the radio dispatch in the present case established probable cause for the defendant's arrest. The pharmacist's report of the robbery was the basis for the radio dispatch, and provided probable cause to believe that a felony had been committed. Pearce's description of the fleeing truck and its occupants was the foundation for Corporal Brokaw's pursuit of the truck, sighted within fifteen minutes and four miles of the robbery, and provided probable cause to believe that the occupants of the truck were the fleeing felons.
 "A law enforcement officer may have probable cause for a warrantless arrest based on the identification or description of the suspect or his motor vehicle without knowing the identity of the person to be arrested. Sexton v. State, Ala. Cr. App., 349 So.2d 126 (1977); also Oatsvall v. State, 57 Ala. App. 240, 327 So.2d 735, cert. denied, 295 Ala. 414, 327 So.2d 740 (1975); Jackson v. State, 55 Ala. App. 334, 315 So.2d 131, cert. denied, 294 Ala. 760, 315 So.2d 136, cert. denied, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 132 (1975). The arresting officer may base his arrest on an official description of the suspect or his motor vehicle as where he receives information from a police radio bulletin or report describing the person or vehicle. Brown v. State, 55 Ala. App. 615, at 619, 318 So.2d 311 (1975); McClendon v. State, Ala. Cr. App., 341 So.2d 174, writ quashed, Ala., 341 So.2d 178 (1976). The identification or description of an offender or a motor vehicle may also be supplied to the police by the victim of or witness to an offense as well as by an informer. Turk v. State, 53 Ala. App. 106, 298 So.2d 37 (1974); Burrow v. State, 55 Ala. App. 24, 312 So.2d 596 (1975); Thomas v. State, 50 Ala. App. 227, 278 So.2d 230
(1973); Smith v. State, 51 Ala. App. 349, 285 So.2d 512, cert. denied, 291 Ala. 798, 285 So.2d 515
(1973)." Campbell v. State, 354 So.2d 325, 327
(Ala.Cr.App. 1977).
The fact that Pearce's description of the truck and its occupants was given to different law enforcement officers from the officials to whom the pharmacist reported the robbery is immaterial. "The knowledge of all the officers involved in a police situation may be evaluated collectively in assessing whether that knowledge constituted probable cause as is constitutionally required." Shute v. State, 469 So.2d 670, 673
(Ala.Cr.App. 1984); Robinson v. State, 361 So.2d 379
(Ala.Cr.App.), cert. denied, 361 So.2d 383 (Ala. 1978). "The knowledge of one officer is imputed to another officer in the situation of a radio call directing a stop or arrest, in assessing whether or not probable cause existed." Shute v.State, 469 So.2d at 673.
 II
The defendant maintains that the State failed to prove a prima facie case due to the inability of the pharmacist or the *Page 1314 
drugstore clerk to give the police a description of the robber or to identify him as the assailant at trial. He citesCalloway v. State, 473 So.2d 601 (Ala.Cr.App. 1985), and Laceyv. State, 354 So.2d 342 (Ala.Cr.App. 1978) for the proposition that when there has been no eyewitness identification of the robber the conviction is due to be reversed. That proposition is unsound and not supported by legal authority. "The accused's identity as a participant in a robbery may be established by circumstantial evidence and does not require eyewitness identification by the victim or others." Calloway, 473 So.2d at 602-03. In both Calloway and Lacey, there was absolutely no evidence, circumstantial or otherwise, connecting the accused to the robbery.
Here, not only was the defendant found in the truck which had been particularly described by an eyewitness to its flight from the scene of the crime, but the fruits of the robbery were found in the truck and the defendant confessed. Upon waiving his Fifth Amendment rights, the defendant stated, "I did it. What can I say?" When asked why he robbed Chapman's Pharmacy, the defendant said he "did it for the money," and upon being asked how much money he got, the defendant said he "didn't get any money, he just took drugs." The evidence was clearly sufficient to sustain the conviction.
 III
The defendant contends that the prosecutor improperly commented on his failure to testify. During closing argument, the following occurred:
 "MR. MARTINO [assistant district attorney]: The defense is trying to throw up smoke screens, trying to lay a fog in the courtroom today. Well it can't work, and it doesn't work. And the reason it doesn't work is because the evidence we heard from the witness stand is insurmountable. And when the jury, you folks, go back into that room to reach a verdict, to speak the truth, the only thing you have is the evidence. That's all you're allowed, the law says, to listen to, to think and to go through and look at. And the evidence comes from the witness stand and my proof has to be what's in that indictment. And the indictment alleges that on that day in question, March 14th, this defendant, William Brinks — William Brinks who wants to tell you that he wasn't there was in —
 "MR. STAMP [defense counsel]: Judge, I want to interpose an objection and approach the bench and make a motion, please.
"(At the bench, out of the hearing of the jury:)
 "MR. STAMP: Twice so far in his argument he's eluded to the fact that 'Mr. Brinks wants to tell you.' The prosecutor is commenting on the fact of the defendant not taking the stand.
"THE COURT: Well, I didn't hear it.
"MR. STAMP; I move for a motion for a mistrial.
 "THE COURT: Motion is denied. Be careful." (Emphasis added.)
In evaluating a claim that the prosecutor's statement amounted to a comment on the defendant's failure to testify, " '[t]he facts and circumstances of each case must be carefully analyzed to determine "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' " McKissick v. United States,379 F.2d 754, 757 (5th Cir. 1967). See also United States v. McCoy,539 F.2d 1050, 1057 (5th Cir. 1976), cert. denied, 431 U.S. 919,97 S.Ct. 2185, 53 L.Ed.2d 230 (1977).
In our judgment, the statement "William Brinks who wants to tell you that he wasn't there" was not manifestly intended to be a reference to the defendant's silence. Rather than focusing on the defendant's failure to come up with a defense, the comment drew the jury's attention to the defense's theory of the case.
During the State's case in chief, defense counsel had vigorously cross-examined the pharmacist and the store clerk regarding their inability to identify the man who had *Page 1315 
robbed them. The pharmacist testified that, although he was unable to see the assailant's face, he did get a good look at the man's neck and hands. Then on cross-examination, defense counsel asked the pharmacist whether he had observed any very large tattoos on the robber's hands. The pharmacist's negative answer was followed by counsel's pointing out tattoos on the defendant's hands.
In view of such evidence, it is reasonably likely that defense counsel argued to the jury the theory of mistaken identity and asserted that his client "wasn't there" at the robbery. Thus, the quoted portion of the prosecution's closing argument did nothing more than to state for the jury the defense theory of the case. In contrast to the legion of cases commenting on the defendant's failure to rebut the State's evidence, we believe that this statement, rather than emphasizing the defendant's silence, merely pointed out his defense and inferentially called on the jury not to believe it.
The comment here was somewhat akin to the statement made inTaylor v. State, 279 Ala. 390, 392, 185 So.2d 414, 416 (1966). There the district attorney asked rhetorically, " 'Gentlemen, are you going to let the man say or let the attorney say, "I am not guilty of this crime." ' " The Alabama Supreme Court observed:
 "The second statement, . . . is typical of special prosecutors who are not experienced in prosecuting criminal cases. When the trial began, the defendant, by his counsel, announced that he pleaded not guilty. We can fairly assume that his counsel argued that he was not guilty, and finally, it was the duty of the trial court to tell the jury in his oral charge that the defendant pleaded not guilty. Moreover, the jury had no power over the defendant or his counsel as to whether either would say the defendant was not guilty.
 "We think the special prosecutor knew these facts, and what he meant to say and imply was that the jury was not going to believe his plea of not guilty in view of the evidence they had heard.
 "We consider this second remark to imply a reference to the strength of the State's case and not to refer, directly or indirectly, to the failure of the defendant to testify." Taylor, 279 Ala. at 392, 185 So.2d at 416.
We also consider the remark here to be a reference to the strength of the State's case, an allusion to the fact that the defense theory was mistaken identity, and, in view of the physical evidence and the defendant's confession, a call for the jury to disbelieve that theory. The comment was not a " 'virtually direct reference to the defendant alone as the individual who has not become a witness.' " Ex parte Wilhite,485 So.2d 787, 789 (Ala. 1986), quoting Griffin v. State,393 So.2d 523, 528 (Ala.Cr.App. 1981). The comment tends to focus on what the defendant did say rather than what he did not say. We do not find the comment to be a reference, either direct or indirect, to the defendant's failure to testify.
 IV
The defendant also complains that the State improperly commented on his commission of other crimes not charged in the indictment. In closing argument, the assistant district attorney stated:
 "Now when you go back there to deliberate it's gonna be your opportunity, your duty, to say, look I'm a citizen of Mobile County and we don't want people like Brinks stealing dope from our stores at gunpoint and taking that dope and selling it. Now how do we figure out he's selling it? Because he said, 'I needed the money.'
 "MR. KNIZLEY [defense counsel]: Your Honor, I object. It's an unreasonable inference from the evidence.
"THE COURT: Overruled."
Although the ground of objection asserted on appeal is not the same as the ground raised at trial, the objection would have been properly overruled even if the ground now asserted had been stated below. See *Page 1316 Campbell v. State, 439 So.2d 718, 723 (Ala.Cr.App.), reversed on other grounds, 439 So.2d 723 (Ala. 1983) (comment that the accused on trial for possession of methaqualone had pills "sacked up for sale"); Green v. State, 389 So.2d 537, 540
(Ala.Cr.App.), cert. denied, 389 So.2d 541 (Ala. 1980) (characterization of defendant charged with possession of seven different controlled substances as a "dope dealer").
In both Campbell and Green, this court found no impropriety in the State's inference that the accused intended to sell the controlled substances, even though that inference imputed the commission of another crime to the accused, because the arguments were " 'amply justified as a deduction from the evidence,' " Green, 389 So.2d at 540. Here, the defendant's admission, "I needed the money," authorized the prosecutor's deduction and comment that the defendant planned to sell the drugs.
 V
Immediately after the verdict of the jury was announced, the State informed the court that it had certified copies of three prior felony convictions of the defendant, and the court sentenced the defendant to life imprisonment without parole. The following then occurred:
 "MR. KNIZLEY [defense counsel]: Your Honor, for the record the defense would take exception to the sentencing proceeding. We haven't seen any of these prior convictions or certified copies of them.
 "THE COURT: Well you're certainly welcome to look at them. These are certified copies of convictions.
 "MR. KNIZLEY: Yes, sir. Judge we'd like to be heard on them after we get an opportunity to look at them.
 "THE COURT: All right. You look at them. If there's anything in there that tells me I didn't do the right thing, I'll reconsider it."
Citing Rule 6(b)(3)(ii), A.R.Cr.P. Temp, requiring that the defendant shall be given notice of the prior convictions upon which the State intends to proceed at "a reasonable time" prior to the sentencing hearing, the defendant claims that the court erred in imposing sentence in the absence of prior notice to him of the convictions. In view of the court's giving defense counsel the opportunity to review the prior convictions and to interpose any objections he had to their use in sentencing, we find that the error of noncompliance with Rule 6(b)(3)(ii) was harmless. Rule 45, A.R.A.P.
Furthermore, since defense counsel made no further objection after the court announced that it would reconsider its sentence if counsel pointed out any impropriety, we must assume that counsel agreed to the trial court's decision. He cannot now seek to predicate error on a decision in which he acquiesced.Henry v. State, 468 So.2d 896, 901 (Ala.Cr.App. 1984), cert. denied, 468 So.2d 902 (Ala. 1985).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.