BOWEN, Judge.
Julius McLeod, Jr. was convicted for first degree sodomy, first degree rape, first degree robbery, and for three charges of kidnapping in the second degree. McLeod was a habitual offender and was sentenced to life without parole in each of the convictions for sodomy, rape, and robbery. In each of the three kidnapping cases, he was sentenced to life imprisonment. McLeod raises four issues on this appeal from those convictions.
I
McLeod’s argument that there was no probable cause for his arrest is without factual and legal merit.
On the afternoon of October 14, 1986, Mrs. R.G., her four-year-old daughter, and her three-year-old son returned to their van after shopping in Food World grocery store. McLeod was hiding in that van. Armed with a knife, he threatened to kill Mrs. R.G. and her children. He bound Mrs. R.G.’s hands with a cord, made the children get behind the rear seat, commandeered the van, and drove away from the grocery store. He subsequently raped and sodomized Mrs. R.G. on two separate occasions before returning to Food World and leaving Mrs. R.G., still bound, and her children in the van. Mrs. R.G. immediately reported the crime and the police arrived at Food World around 3:15 that afternoon. Mrs. R.G. gave the police a description of her attacker, including the clothing he had been wearing.
In September and October of 1986, there had been three prior incidents almost identical to that involving Mrs. R.G. on October the 14th. By September 27th, the Fairfield Police had narrowed their investigation down to McLeod and another individual.
On October 14th, the police had McLeod under surveillance and observed his automobile at his apartment around 11:00 that morning. The car was not there just before noon that same day and was not located until later that same afternoon after the crime had been committed.
After McLeod’s automobile had been located, Fairfield Police Patrolman Reuben Wilkinson, in an unmarked vehicle, followed McLeod to a pawn shop, into which McLeod entered and where he remained approximately ten minutes. Officer Wilkinson then followed McLeod to a residence. McLeod got out of his car and headed toward the house. Officer Wilkinson “called him back and asked him for his driver’s license.” McLeod asked the officer, “Did you stop me for my tail lights being out.” The officer ran a check on the driver’s license and, finding no outstanding warrants, returned the license to McLeod, who “made the statement he was going to see a guy about getting his car fixed.” Officer Wilkinson “told him he could go on and see about getting his car fixed.” Offi *193 cer Wilkinson testified that he asked McLeod for his driver’s license for “[t]wo reasons, to determine who for sure was driving that vehicle. Number two was— that was the main reason for asking him. I got out of the car to observe and see what kind of clothing description, pants, shoes that he had to radio on into them.”
The officer then radioed in a complete description of the clothing McLeod was wearing and was advised by the dispatcher to make the arrest. McLeod was arrested at 4:43 p.m. on October 15, 1986.
Fairfield Police Sergeant John F. Taylor had given the order to arrest McLeod. When Sergeant Taylor authorized McLeod’s arrest, he knew that McLeod was one of two suspects in a series of very similar crimes of recent occurrence; that McLeod’s car was not at his apartment and could not be located when the crime was committed; that Mrs. R.G. had been robbed of $47.00, her wedding rings, and a watch; that, within two hours after the crime, McLeod had visited a pawn shop, and that McLeod’s physical description, especially the clothing he was wearing, closely matched the victim’s identification of her assailant. Sergeant Taylor’s information was based upon his personal investigation and knowledge of McLeod as a suspect in the prior similar crimes; information Mrs. R.G., the victim, gave to Bessemer Police Officer Karen Hicks; and information obtained from Officer Wilkinson, who had McLeod under observation.
Without question, there was ample probable cause for McLeod’s arrest. Pearson v. State, 455 So.2d 963, 965 (Ala.Cr.App.1984). “When a police officer makes an arrest on the basis of a message received over the police radio, the question of probable cause is to be adjudged upon the full information which caused the message to be sent out over the radio and not upon the basis of the message alone.” 5 Am.Jur.2d Arrest § 46, 1988 Cumulative Supplement at 277; Brinks v. State, 500 So.2d 1311, 1313 (Ala.Cr.app.1986); Campbell v. State, 354 So.2d 325, 327 (Ala.Cr.App.1977). See also Ex parte Peoples, 510 So.2d 574, 576-77 (Ala.), cert. denied, Peoples v. Alabama, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987).
Officer Wilkinson was justified in stopping McLeod after he had exited his car and requesting his driver’s license. Before Wilkinson briefly detained McLeod, he knew that McLeod was a suspect in previous cases similar to the one that had just been committed; he could positively identify McLeod’s car but did not know who was driving it (“I knew who the car was registered to but I didn’t know him per se.”); and the tail lights on McLeod’s vehicle were not working.
Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Officer Wilkinson had an articulable and reasonable suspicion for stopping McLeod because of the prior crimes and the belief that McLeod was involved. United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); Ex parte Yeung, 489 So.2d 1106, 1109-10 (Ala.1986); Richardson v. City of Trussville, 492 So.2d 625, 627-628 (Ala.Cr.App.1985); Cotton v. State, 481 So.2d 413, 415 (Ala.Cr.App.1985).
II
The State’s evidence supports the finding that the statements given by McLeod to the police after his arrest were made in full compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that absolutely none of his constitutional rights, including those distinguished in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), were violated. Although McLeod, through his own testimony, did present evidence that his statements were coerced and involuntary, the ruling of the trial judge is supported by substantial evidence and is due to be upheld. Musgrove v. State, 519 So.2d 565, 576 (Ala.Cr.App.1986), affirmed, Ex parte Musgrove, 519 So.2d 586 (Ala.1987), cert. denied, Musgrove v. Alabama, — U.S.—, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988).
III
McLeod’s argument that the State failed to present a prima facie case is premised on *194 the contention that his statements and the items of physical evidence connecting him to the crime which were seized from his person were the fruits of an illegal arrest. We have found that McLeod’s arrest was proper and lawful and consequently these items were properly admitted into evidence.
IV
McLeod testified at trial in his own defense. After the defense had rested its case, the State was allowed to recall McLeod as a witness and impeach him with his prior convictions. This was a matter within the discretion of the trial judge, Alabama Code 1975, § 15-14-4, of which we find no abuse. Alldredge v. State, 431 So.2d 1358, 1362 (Ala.Cr.App.1983).
This case was originally submitted for decision on September 6,1988. On September 26, 1988, McLeod requested that new counsel be appointed and that he be given time to file a supplemental brief. This Court granted McLeod 28 days to file that supplemental brief but did not appoint new counsel. No supplemental brief has been filed.
McLeod’s crime was especially foul and reprehensible. His capture was the result of sound investigation by members of the Fairfield Police Department. Our review convinces us that he received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.