Glen Edward Jackson was indicted for the capital offense of murder committed during the course of a robbery, in violation of § 13A-5-40(a)(2), Code of Alabama 1975. He was found "guilty as charged in the indictment" and sentenced to life in prison without parole. The appellant raises five issues on appeal. The facts that are pertinent to each issue will be discussed separately below.
 I
The appellant contends that the trial court erred in denying his motion for a continuance. The record reveals that the appellant's attorneys requested a continuance at a pretrial hearing which was held approximately 10 days before the trial. The appellant's attorneys were appointed to represent him approximately four months before the trial and represented him at his preliminary hearing. The case had previously been continued at the appellant's request. Appellant's counsel argues that they were unable to prepare adequately for the trial because they had only recently received a response to some of their discovery requests and the appellant was also being uncooperative.
The grant or denial of a continuance rests within the discretion of the trial court. Johnson v. State, 500 So.2d 69
(Ala.Crim.App. 1986); Cotton v. State, 481 So.2d 413
(Ala.Crim.App. 1985). "This is true even where an alleged lack of preparation by counsel is the result of the refusal of the accused to cooperate with counsel." Cotton, 481 So.2d at 416.See also Godfrey v. State, 383 So.2d 575 (Ala.Crim.App.),cert. denied, 383 So.2d 579 (Ala. 1980). The record reveals that, after denying the motion, the trial judge explained the seriousness of the situation to the appellant and advised him to cooperate with his attorneys. The record also reveals that the State believed that all discovery requests had been complied with. Furthermore, the court ordered the State to immediately comply with any discovery requests that might have been omitted. We find that the trial court did not err in denying the appellant's motion for continuance.
 II
Jackson next contends that the trial court erred in denying his motion for *Page 618 
change of venue based on prejudicial pretrial publicity. The appellant argues that he could not receive a fair trial in Clarke County, Alabama, because the community had a fixed opinion of his guilt and several newspaper articles reinforced this opinion. The appellant partially bases his argument on the fact that he is a 19-year-old black male and the victim was a white male who was a respected member of the community.
The record reveals that two stories concerning the incident were published in the South Alabamian which has a distribution of approximately 1,000 newspapers in Clarke County. The ClarkeCounty Democrat, which has a circulation of 3,900 in Clarke County, published approximately six articles about the incident. James Cox, the owner and publisher of the ClarkeCounty Democrat, testified that four of the six articles contained only factual accounts of the incident. None of these newspaper accounts is contained in the record.
Although a few jurors stated that they believed the newspaper accounts, they also stated that they could set that aside and render a fair verdict based solely on the evidence. All of the jurors who stated that they were familiar with the case indicated that they could render a fair and impartial verdict based solely on the evidence produced at trial.
 "There are two situations in which a change of venue is mandated. The first is when the defendant can show that prejudicial pre-trial publicity 'has so saturated the community as to have a probable impact on the prospective jurors' and thus renders the trial setting 'inherently suspect.' McWilliams v. United States, 394 F.2d 41 (U.S.C.A. 8th Cir. 1968); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)."
Nelson v. State, 440 So.2d 1130, 1131 (Ala.Crim.App. 1983). "The second situation occurs when the defendant shows a 'connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual prejudice.' McWilliams v. United States, supra." Nelson,440 So.2d at 1131-32. "Newspaper articles, without more, are insufficient to grant a motion for change of venue." Ex parteGrayson, 479 So.2d 76 (Ala. 1985). Jurors are not required to be totally ignorant of the facts and issues involved and it is sufficient if jurors can render a verdict based on the evidence presented. Id. Furthermore, since the trial judge lives in the community where the appellant alleges he cannot receive a fair trial, the judge is in the best position to assess the impact of any publicity and decide whether or not the defendant could receive a fair trial in that community. Primm v. State,473 So.2d 1149 (Ala.Crim.App. 1985).
We find that the appellant has failed to show either that the newspaper articles had a probable impact on the prospective jurors or the existence of actual prejudice. See Grayson;Magwood v. State, 426 So.2d 918 (Ala.Crim.App. 1982) aff'd,426 So.2d 929 (Ala. 1983). Therefore, the trial court did not err in denying the motion for change of venue. Dobbert v.Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
 III
The appellant next contends that the State violated the principles set forth in Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because the district attorney used six of eight strikes to remove blacks from the jury panel. Two black members served on the jury panel that heard the case.
The prosecutors articulated the following reasons for their peremptory strikes of black jurors: (1) juror's husband was first cousin to the defendant's stepfather and State did not feel that jurors who have a connection with a defendant's family are good jurors; (2) juror went to school with defendant's uncle and was acquainted with defendant's mother through her employment; (3) juror was in a category of young females who were in the same age group as defendant; (4) juror failed to respond during voir dire about two prior arrests and several misdemeanor convictions, juror was also acquainted with defendant's uncle and was seen speaking to him prior to the jury being struck; (5) juror had prior conviction *Page 619 
for second degree murder; and, (6) juror had two older children and was perceived as a "mother figure," juror's brother had also been killed five years earlier but juror knew very little about the case involving her brother's death and the State was concerned about her lack of interest.
The State also contended at the Batson hearing that they also struck three white jurors who were approximately the same age as the defendant and two white jurors with older children who the State also perceived as "mother figures." The appellant did not rebut the legitimacy of these statements at the hearing.
"Any inferences arising from the use of peremptory strikes to remove black jurors should be viewed together 'with other relevant circumstances.' " Currin v. State, 535 So.2d 221, 224
(Ala.Crim.App.), cert. denied, 535 So.2d 225 (Ala. 1988), (citing, Batson, 476 U.S. at 106, 106 S.Ct. at 1728). Evidence that the State struck non-black jurors for substantially the same reasons as black jurors is evidence of neutrality that may overcome the presumption of discrimination. Ex parte Branch,526 So.2d 609 (Ala. 1987); Pollard v. State, 549 So.2d 593
(Ala.Crim.App. 1989). Strikes based on prior convictions have also been held to be race neutral. Pollard; Bryant v. State,516 So.2d 938 (Ala.Crim.App. 1987).
The trial court's findings may only be reversed if they are clearly erroneous. Branch. We find that the record sufficiently demonstrates that the State did not exercise its peremptory strikes in a racially discriminatory manner.
 IV
Jackson next contends that the trial court erred in denying his motion to quash the venire because the venire did not represent a fair cross-section of the community. The record reveals that the original jury venire contained 73 members, 26 of whom were black (36%). There were 46 white jurors (64%) and one Indian juror. Thirteen jurors were removed for cause, leaving 44 white jurors (73%), 15 black jurors (25%) and one Indian juror. Pursuant to the jury selection process in Clarke County, after the voir dire, 36 members of the venire were randomly selected as potential jurors. Of these 36, 8 jurors (22%) were black. The Probate Judge of Clarke County testified that approximately 42.7% of the population of Clarke County was black. The appellant did not present any evidence that potential black jurors were excluded from the Clarke County jury pool. Furthermore, the appellant concedes that the process for obtaining potential jurors used in Clarke County has been previously upheld as a valid method of jury selection.Jackson v. State, 485 So.2d 389 (Ala.Crim.App. 1986); Lopezv. State, 415 So.2d 1204 (Ala.Crim.App. 1982).
The United States Constitution "does not require an exact proportion between the percentage of blacks in the population and those on the jury list. What is required is that no qualified person can be excluded from jury service." Butler v.State, 285 Ala. 387, 391, 232 So.2d 631 (1970). See alsoJohnson v. State, 502 So.2d 877 (Ala.Crim.App. 1987) (neither jury roll nor venire is required to be a perfect mirror of the community); Rayburn v. State, 495 So.2d 733 (Ala.Crim.App. 1986) (defendant must show that minority group is underrepresented on jury rolls and that the underrepresentation is due to a systematic exclusion of that group in the jury process). We find that the trial court did not err in denying the motion to quash the venire.
 V
The appellant argues that his confession was improperly admitted into evidence because it was not voluntary. The appellant contends that the confession was involuntary because he was only 19 years of age, was in the 12th grade, was subjected to a long interrogation and was very nervous. We disagree and find that the appellant's confession was voluntary.
The record reveals that the appellant was asked to accompany Investigator Charles Breland to the police station at approximately 7:00 p.m. Breland testified that the appellant went with him voluntarily. Breland also testified that he first advised the appellant of his Miranda constitutional *Page 620 
rights in the police car after the appellant initiated a conversation with him. He testified that the appellant understood his rights. The appellant started talking to the police at the police station at approximately 7:15 p.m. after executing a waiver of rights form. Breland testified that the appellant was again advised of his rights at 8:05 p.m. because he changed his story.
Clay Meyers, an FBI photographer with investigative experience, who was a friend of the victim, testified that he also read the appellant his rights at 9:55 p.m. He testified that he did not coerce, threaten or induce the appellant or make any promises to him. He further testified that the appellant told him several stories before he confessed. The appellant was again advised of his rights before his statement was taped at 10:50 p.m.
A determination of whether or not a confession is voluntary is determined by the totality of the circumstances in a particular case. Moore v. State, 415 So.2d 1210
(Ala.Crim.App. 1982). The trial court's decision should not be disturbed unless contrary to the great weight of the evidence. Hubbard v.State, 500 So.2d 1204 (Ala.Crim.App.), aff'd, 500 So.2d 1231
(Ala. 1986). Our review of the record indicates that the appellant clearly understood his constitutional rights and his confession was purely voluntary. Furthermore, the appellant did not present any evidence to rebut the State's showing of voluntariness. See Hubbard; Grayson v. State, 479 So.2d 69
(Ala.Crim.App. 1984), aff'd, 479 So.2d 76 (Ala. 1985). Therefore, we find that the trial court properly admitted the appellant's confession into evidence. See Grayson; Moore.
We have carefully reviewed this record. It is free from error. This cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.