TYSON, Judge.
Craydell Walker and her daughter, Edna Walker Cotton, were indicted for theft in the first degree in violation of § 13A-8-3, Code of Alabama 1975. The two were tried together and the jury found the appellant and Cotton “guilty as charged in the indictment.” The appellant was sentenced to five years’ imprisonment, suspended for one year. The court ordered restitution in the amount of $28,288.77.
Nora Bryant, a resident of Newton, Alabama, testified that she had a savings account with First Alabama Bank in Montgomery prior to 1984. When Bryant checked on her account in January of 1984, all of her money had been withdrawn.
Bryant stated she had not given anyone permission to withdraw or transfer funds from this account. She testified that she never gave the appellant or Cotton (who were her nieces) any money.
Bryant stated that in 1983 she lived with her sister in Dothan, Alabama. However, she said she never stayed with the appellant or Cotton while she was in Dothan.
Bryant denied that it was her signature on withdrawal slips from her account in Montgomery.
Christopher Bylsma, an Assistant Vice President of First Alabama Bank in Montgomery, testified that he was custodian of the records for this bank. Bryant had a savings account with his bank and it was a dormant account until July of 1983. A dormant account is one in which no activity takes place for a period of 18 months.
*107 On July 20, 1983, a withdrawal from Bryant’s account was made. The $4,000 was disbursed in the following manner.
(1) $162.50 —cashier’s check to Flowers Hospital in Dothan
(2) $480.00 — cashier’s check to Yellow Brick Road
(3) $2600.00 — cashier’s check to the appellant
(4) $200.00 — cashier’s check to Joshua Cotton (Edna Cotton's son)
(5) $522.40 — cashier’s check to Bryant
(6) $ 10.10 — cashier’s check to CCI
(7) Remaining amount — money order
In August of 1983, $23,088.77 was withdrawn from Bryant’s account in Montgomery. This money was paid out in the following manner:
(1) $21,500 — cashier’s check to First Alabama Bank in Dothan
(2) $1,588.77 — cashier's check to Bryant
In December of 1983, $1,200 was withdrawn from Bryant’s account. The money was disbursed in a cashier’s check to Bryant. There were two endorsements on the back of this check, Bryant’s and Cotton’s. The bank requires a second endorsement when the person presenting the check is not the first endorser of the check.
Don Parrish, the fraud investigator for First Alabama Bank in Montgomery, testified that he took statements from the appellant, Walker, and Cotton in February of 1984.
Parrish was told that the withdrawal slips had been signed by Bryant. Part of the money had been given to them to help support Bryant because she lived with them for a period of ten months.
Nolan Gilbert, the assistant operations officer for First Alabama Bank in Dothan, testified that he is custodian of the records for that bank. He stated that, in August of 1983, a savings account in the names of Bryant and Cotton was opened at the bank. Cotton opened the account and took the signature card from the bank to obtain Bryant’s signature and then returned the card to the bank. A cashier’s check in the amount of $21,500 from First Alabama Bank in Montgomery was deposited into the joint savings account of Bryant and Cotton in Dothan. All of the withdrawals from this account were made by Cotton.
A money market account belonging to Cotton and the appellant, Walker, was opened in August of 1983, with a withdrawal of $15,000 from the savings account belonging to Cotton and Bryant. Late in that month, $10,000 was withdrawn from the money market account and a certificate of deposit was purchased. A couple of weeks later the appellant cashed the CD and received $9,796.48. $5,796.48 was deposited back into the money market account and $4,000 was received in cash.
Bobby Driscal, an Assistant Vice-President of Southtrust Bank of Dothan, testified he is custodian of records for this bank. He stated that a cashier’s check, in the name of the appellant, from First Alabama Bank in Montgomery was disbursed by his bank in the following manner:
(1) $300.00 — to checking account in the name of Cotton and payable on her death to the appellant, Walker
(2) $1,000 — to savings account in the names of Cotton and the appellant, Walker
(3) $1,300 — received in cash by the appellant, Walker
Lenny McGhee testified that Bryant is his aunt and he knows the appellant through his aunt. In the fall of 1983, the appellant came to his house and asked him if he wanted to “get in on this.” (R. 124). When McGhee asked what she meant, the appellant replied, “get some of Aunt Nora’s money.” (R. 124).
I
The appellant challenges the sufficiency of the evidence.
“A person commits the crime of theft of property if he:
“(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
“(2) Knowingly obtains by deception control over the property of another, with *108 intent to deprive the owner of his property.”
Ala.Code, § 13A-8-2 (1975).
The theft of property in excess of $1,000.00 constitutes theft in the first degree. AIa.Code, § 13A-8-3 (1975).
Bryant testified that she did not authorize the $4,000, $23,088.77 or $1,200 withdrawals from her savings account at First Alabama Bank in Montgomery, Alabama. She did not give the appellant nor Cotton permission to withdraw or transfer funds from her savings account.
Part of the $4,000 withdrawal was a cashier’s check issued to the appellant in the amount of $2,600. Of this $2,600, $300 was deposited into a checking account belonging to Cotton (and payable at death to the appellant), $1,000 was deposited into a joint savings account belonging to the appellant and Cotton and the remaining $1,300 was received in cash by the appellant, Walker.
$21,500 of the $23,088.77 withdrawal was deposited in a savings account belonging to Cotton and Bryant. Of the $21,500, $15,-000 was withdrawn and used to open a money market account in the names of the appellant and Cotton. Of that $15,000, $10,000 was withdrawn and used to purchase a certificate of deposit by the appellant. The appellant cashed the CD a short time later and received $9,796.48. Of this money, $5,776.48 was deposited back into the money market account and the appellant received the remaining $4,000 in cash.
Although the evidence in this case is entirely circumstantial, circumstantial evidence is entitled to the same weight as direct evidence as long as it points to the guilt of the accused. Carpenter v. State, 408 So.2d 559 (Ala.Crim.App.1981), cert. denied, 408 So.2d 561 (Ala.1982).
The evidence presented by the State certainly tends to prove the appellant committed this offense. Thus, the question of the appellant’s guilt was properly submitted to the jury. Hurst v. State, 402 So.2d 1124 (Ala.Crim.App.1981).
Furthermore, the appellant asserts the State failed to prove the requisite intent. Intent may be inferred from the facts and circumstances of a case, including the actions of and the statements by the accused. Hinds v. State, 423 So.2d 1382 (Ala.Crim.App.1982).
The actions of this appellant in handling the money obtained from Bryant’s account and her statements to McGhee certainly give rise to the inference that she possessed the requisite intent to commit this offense. Thus, her intent was a question for the jury. Lee v. State, 439 So.2d 818 (Ala.Crim.App.1983); Craig v. State, 410 So.2d 449 (Ala.Crim.App.1981).
Therefore, the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.