Mark Allen was indicted for forgery in the second degree, in violation of § 13A-9-3, Code of Alabama 1975, and theft of property in the second degree, in violation of § 13A-8-4, Code of Alabama 1975. The jury found the appellant "guilty on both counts as charged in the indictment." The trial judge sentenced the appellant to fifteen years' imprisonment in the state penitentiary on each conviction as a habitual felony offender, both sentences to be served concurrently.
Hartus Shaddix testified that the appellant approached him and asked whether he, Shaddix, had any work for the appellant to do. Shaddix told the appellant that he had two oak trees which needed to be cut down.
The appellant began cutting the trees, but he said he needed money to rent a chain saw and to pay an assistant. Between December 3 and December 10, 1986, four checks were given to the appellant for $100.00 each. The appellant filled out all the needed information, except Shaddix's signature, because of Shaddix's poor eyesight. Shaddix then examined the checks and signed them.
When the job was completed, the appellant and Shaddix used the same procedure to fill out the fifth and final check. Shaddix testified that the final payment was to be $100.00 to complete the agreed upon price of $500.00. Shaddix, however, testified that he told the appellant to write the check for $75.00 instead, so that Shaddix could fix the damage to his chain saw, allegedly done by the appellant. Shaddix claimed that the appellant had previously asked for $25.00 to get the chain saw fixed, which he refused to give the appellant.
Shaddix further testified that all five checks were drawn on his checking account at Valley National Bank in Valley, Alabama. He stated that he received all five checks with his bank statement. He noticed that the last check was changed to $875.00 rather than the $75.00 that he had authorized. His bank statement indicated that the check had been cashed for the greater amount.
The appellant contradicted certain relevant portions of Shaddix's testimony. The appellant stated that he and Shaddix agreed on a full price of $1,300.00 to cut down two oak trees — $700.00 for one and $600.00 for the other.
The appellant agreed that he received four checks for $100.00 each. He also agreed that he completed all the information on the face of the five instruments, except the drawer's signature. He, however, claims that the final payment was to be $900.00, but Shaddix instructed him to deduct $25.00 because of some damage done to his saw.
The appellant admitted that he endorsed all five checks and cashed them. He, however, denied changing the check from $75.00 to $875.00 without the permission of Shaddix.
Captain Charles Story with the Valley Police Department testified that he received the check in question from Shaddix in January of 1987. According to Story, Shaddix told him that the check at issue had been altered. Story sent the check by certified mail to Lamar Miller of the Department of Forensic Sciences in Birmingham, Alabama.
Story further testified that he questioned the appellant about the check on May 11, *Page 1187 
1987. The appellant told him that he filled in the amount on the check for $875.00, rather than $900.00, at the direction of Shaddix.
Lamar Miller testified that he received the check from Captain Story by certified mail. He stated that he examined the document and noticed that the figure "8" and the words "eight hundred and" were written with a pen with a broader base than that used to write the remaining figures and words on the check. He stated that he made slides of the check using infrared photography. The "8" and "eight hundred and" on the check were much lighter on the slide than the rest of the writing on the check. This difference in Miller's opinion, suggested that this portion of the face of the check was written with a different pen. (R. 54-56, 196-98).
 I
The appellant contends that the State violated the mandates of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), when it used nine of its twelve peremptory challenges to strike blacks from the petit jury venire.
The appellant claims that the reasons given by the prosecutor for striking the nine blacks were not "clear and reasonably specific." Oliver v. State, 526 So.2d 892, 893 (Ala.Crim.App. 1987).
The prosecutor stated that nine persons on this venire had been jurors on a trial the preceding day which "locked up." One of the nine was struck by the appellant. The prosecutor struck the remaining eight, five of whom were black.
The other four strikes exercised by the prosecutor were all used to remove blacks from the petit venire for the following reasons: (1) Juror 43 grew up with the appellant; (2) Juror 30's family was known by law enforcement to be involved in "drug dealings"; (3) Juror 151 was known by local law enforcement officers to have a bad reputation and was believed to be related to a local criminal with the same last name; and (4) Juror 108 had the same last name and was believed to be related to a person whom this prosecutor had previously prosecuted. (R. 3-8). Upon hearing the stated grounds, the trial court denied the appellant's Batson motion.
The decision of the trial court is given "great deference" by the appellate courts of this state. Batson, 476 U.S. at 98,106 S.Ct. at 1724; Currin v. State, 535 So.2d 221, 224
(Ala.Crim.App.), cert. denied, 535 So.2d 225 (Ala. 1988); Ex parteBranch, 526 So.2d 609, 625 (Ala. 1987). The trial judge can better distinguish "bona fide reasons" from "sham excuses."Currin, 535 So.2d at 224, quoting People v. Wheeler, 22 Cal.3d 258,282, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).
When deciding if there has been a Batson violation, the trial court must examine the prosecutor's stated reasons in light of "other relevant circumstances." Currin, 535 So.2d at 224. In the cause sub judice, three of the petit jurors were black. The trial judge pointed out that this closely approximates the population ratio of blacks-to-whites in Chambers County. Cf.Currin.
We, thus, find no error in the decision of the trial court on this issue. See Branch, 526 So.2d at 625 (clearly erroneous standard).
 II
On May 4, 1988, the appellant filed a motion to dismiss his court-appointed counsel. He also filed a written complaint against his attorney, claiming that he had failed to contact a witness and that he had spoken with the appellant's attorney in Lee County about another criminal charge pending in that county. (R. 161-62.) The trial court granted the appellant's motion (R. 163), and another lawyer was subsequently appointed.
After the defense rested its case, the trial judge asked the appellant if he had anything to add before the judge instructed the jury. The appellant, out of the hearing of the jury, stated that he felt that his constitutional rights to due process had been violated because of his prior counsel's actions. The trial judge disagreed, stating *Page 1188 
that the appellant received a fair trial. (R. 106-08.)
To prove ineffective assistance of counsel, the appellant must satisfy the two-pronged test as enunciated inStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). The appellant "must show that his counsel's representation fell below an objective standard of reasonableness" and that, because of this unreasonable conduct, he was prejudiced at trial. Ex parte Lawley, 512 So.2d 1370,1372 (Ala. 1987). To prove prejudice, the appellant must show that but for his counsel's ineffectiveness the outcome of his trial would have been different. Lawley, 512 So.2d at 1372. Seealso Ex parte Daniel, 459 So.2d 948 (Ala. 1984); Ex parteBaldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372,105 S.Ct. 2727, 86 L.Ed.2d 300 (1985) (adopting Strickland v.Washington as law in Alabama).
Assuming arguendo that his prior counsel's conduct was unreasonable, we find from reviewing the record that the appellant has failed to prove that he was prejudiced by that conduct. As the State points out in its brief, the appellant's first counsel was dismissed more than one year prior to his trial. The appellant failed to show that his first counsel's failure to subpoena the desired witnesses prevented his current counsel from doing so.
Therefore, we cannot speculate as to whether the outcome of the trial would have been different, especially in light of the overwhelming evidence presented by the State.
 III
Shaddix testified, over appellant's objection, that he received the check at issue in the mail with his bank statement. Shaddix stated that the check cleared his account.
The appellant claims that Shaddix's testimony as to what the bank statement revealed was hearsay. He further contends that the bank statement itself would have been the best evidence to show that the check had, in fact, cleared Shaddix's bank account.
We disagree with the appellant. It is settled law in this state that one may testify to facts within his knowledge.See, e.g., Staton v. State, 397 So.2d 227, 231
(Ala.Crim.App.), cert. denied, 397 So.2d 232 (Ala. 1981).
Furthermore, where a witness testifies based on his own personal knowledge, independent of a document in question, the best evidence rule does not apply. Johnson v. State,541 So.2d 1112, 1116 (Ala.Crim.App. 1989). In Johnson, the witness testified that he made cards out on the prisoners, designating to which work group they belonged. When asked if he remembered which work group that appellant was assigned to, the witness responded, "vaguely." Johnson, 541 So.2d at 1116. See alsoJohnson v. Langley, 495 So.2d 1061, 1065 (Ala. 1986) (testimony about payment of money is competent, and the written record goes to the probative value of such testimony, not its competency).
In the cause sub judice, Shaddix's testimony was more specific than that testimony in Johnson. He testified that he received his bank statement and the check at issue, and that the check had been charged to his bank account. His testimony was corroborated by the admission of all five checks, which were stamped "paid" on their faces (R. 186-95), and by the testimony of the appellant, who admitted to endorsing and cashing all five checks.
We, therefore, hold that admittance of Shaddix's testimony was not error.
 IV
The appellant lastly argues that the State failed to prove the required elements of either of the crimes for which he was convicted.
 A
The appellant was indicted and convicted of forgery in the second degree. The requirements of this crime are set out in § 13A-9-3, Code of Alabama 1975, as follows:
 "(a) A person commits the crime of forgery in the second degree if, with intent *Page 1189 
to defraud, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
 "(1) A . . . check . . . which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status. . . ."
The crux of the appellant's argument is that the State failed to prove that the appellant was not authorized to complete the check for $875.00. See Finney v. State, 348 So.2d 876
(Ala.Crim.App. 1977).
We disagree. Shaddix testified that he instructed the appellant to write the check for $75.00. Shaddix stated that he inspected the check, that it was made out for $75.00, and that he signed the check.
The State also offered the testimony of Lamar Miller of the Department of Forensic Sciences. Miller testified that it was his opinion that the character "8" and the phrase "eight hundred and" were written with a broader-based pen than the rest of the information on the face of the check. The infrared photographs which were taken by Miller and admitted into evidence further substantiate that the check was written with two separate types of ink.
Therefore, we find, viewing the evidence most favorably to the State, that a jury could, in the context of this case, find that the check at issue was altered with the intent to defraud and that such act adversely affected the legal rights of Shaddix in that instrument. See Cumbo v. State, 368 So.2d 871
(Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
 B
The appellant also contends that the State failed to make out a prima facie case that he committed the offense of theft of property in the second degree. Ala. Code § 13A-8-4 (1975).
Count two of the indictment alleges that the appellant committed this crime by knowingly exerting unauthorized control, "by deception," over $800.00 belonging to Hartus Shaddix. (R. 147.) The $800.00 is derived from the difference between the $75.00 that Shaddix claims he authorized and the $875.00 for which the check was allegedly altered and cashed.
Section 13A-8-2(2), Code of Alabama 1975, sets out the definition for theft of property upon which this grand jury relied. That section states that theft may occur where one deceptively exercises control over the property of another. Since the amount in controversy is $800.00, the appropriate charge is theft of property in the second degree. Ala. Code § 13A-8-4(a) (1975) (between $100.00 and $1,000.00).
 "Deception" is said to occur, inter alia, "when a person knowingly: a. Creates or confirms another's impression which is false and which the defendant does not believe to be true. . . . "
Ala. Code § 13A-8-1(1) (1975).
The appellant's primary argument as to this contention is that the State failed to prove who was the "owner" of the $800.00, allegedly taken. He claims that there cannot be proof of theft unless there is proof of ownership of the stolen property.
While we agree with this proposition, we do not agree that the State failed to prove to whom the $800.00 belonged.
Shaddix testified that he signed five checks payable to the order of the appellant and drawn on his checking account at Valley National Bank. Shaddix further testified that he received all five checks with a monthly bank statement. It was at this time that he noticed that the fifth check was written for $875.00, and that his account was debited for this amount.
The appellant cites this court to the authority which answers his query. In Ex parte Fuller, 387 So.2d 258, 260 (Ala. 1980), the relevant proposition was stated as follows:
 "The law in Alabama as enunciated in Hobbie v. State, Ala.Cr.App., 365 So.2d 685, is well settled that the ownership of stolen property may be laid in the party in possession either as the owner, bailee or agent."
When a drawee bank honors a check allegedly drawn by its customer, the drawer, the bank acts as its customer's agent. *Page 1190 
When money is withdrawn from the drawer's account, the technical owner is the drawer himself. This is true irrespective of civil remedies, as the appellant argues, that the drawer may have against the bank for money paid over a forged signature or an altered instrument. See Ala. Code §7-4-406 (1975).
In Walker v. State, 500 So.2d 106 (Ala.Crim.App. 1986), we affirmed that appellant's conviction for theft of property in the first degree. In Walker, the appellant withdrew more than $28,000.00 from another's savings account. Some of the money was removed by using bank drafts made payable to the appellant. While the issue of ownership was not raised in Walker, we referred to the account as belonging to the depositor. Walker,500 So.2d 106, 106-08.
In the present case, we therefore find, viewing the evidence most favorably to the State, that the petit jury could reasonably and fairly infer that the appellant deceptively exerted control over the property of Shaddix in the amount of $800.00. See Cumbo.
For the reasons stated, the judgment of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.