The appellant was convicted of forgery in the second degree and was sentenced to 19 years' imprisonment pursuant to the Habitual Felony Offender Act.
 I
The appellant argues that he was denied his rights to a fair trial by an impartial jury, because, he says, the State improperly struck two of the five prospective black jurors. The appellant argues that the State failed to come forward with sufficient race-neutral explanations for these two strikes.
The record indicates that there were 36 potential jurors, five of them black. The prosecutor struck two black females, leaving three blacks sitting on the jury. The record indicates that, after the jury was struck, the trial court held a hearing on the appellant's Batson motion. During the hearing, the appellant alleged that the State had asked only superficial questions during the voir dire and that the two strikes against black veniremembers therefore must have been made for racial reasons. The prosecutor responded that he had struck a jury from the very same panel earlier in the week and that, during the prior voir dire, a number of questions which went into great detail were asked. The prosecutor further alleged that he made note of that fact during the striking and he stated that he was "pretty well familiar with them." The prosecutor further responded that he struck a black female; he said he had represented in a criminal case a person that he believed was a relative of the female prospective juror and that thereafter, when he went to work with the district attorney's office, he had to prosecute the same relative, "for which members of her family called me [the prosecutor] on the phone and were very upset that I would do something like that after I had represented her." The prosecutor stated that although he did not know for certain that the two were related, they had the same last name and "could pass for twins almost."
The prosecutor also stated that he struck the other black female pursuant to questions which he asked of her during voir dire, as to whether or not she was related to Willie Frank Eady. The prosecutor stated *Page 358 
that he felt that the court was probably "aware of" that individual and, because the potential juror stated that she was related to him by marriage, he struck her. Thereafter, the trial court denied the appellant's motion. Initially, we note that it is doubtful that the appellant presented a prima facie case of racial discrimination pursuant to Ex parte Jackson,516 So.2d 768 (Ala.Cr.App. 1986), or Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); however, because the prosecutor went forward with his reasons for the strikes, we find that the trial court properly held the reasons given by the prosecutor to be sufficiently race-neutral. Ex parteBranch, 526 So.2d 609 (Ala. 1987). See Ex parte Lynn,543 So.2d 709 (Ala. 1988); Wilson v. State, 571 So.2d 1237
(Ala.Cr.App. 1989). See also Allen v. State, 555 So.2d 1185
(Ala.Cr.App. 1989) (court upheld as race-neutral reasons given by prosecutor for striking black jurors: that juror had the same last name and was believed to be related to a person whom this prosecutor had previously prosecuted and another juror who was known by law enforcement officers to have a bad reputation and was believed to be related to a local criminal with the same last name).
 II
The appellant argues that the trial court erred in denying his motion to suppress evidence which was seized pursuant to a warrantless search. The appellant concedes that the officer had the right to stop and question him but argues that the officer did not have the right to search him unless he was under the reasonable belief that the appellant was armed and potentially dangerous. The record indicates that a police officer responded to "a lookout that had been given . . . by the communications section" concerning three black men who had twice tried to pass checks, which had been stolen and forged, at a grocery store. The dispatch also contained information describing the perpetrators' clothing and indicated that they were last seen walking in an easterly direction from the store. The officer then proceeded to the grocery store and, en route, observed three black men matching the description. The officer testified that he and another officer who was riding with him stopped their vehicle and approached the men. They identified themselves as police officers and asked the men to place their hands against the police car, which they did. A check which had been stolen and forged, was taken from the pockets of each of the three men as they were searched. On cross-examination, the officer testified that he did not place the appellant under arrest until he discovered the checks in their pockets. The appellant contended that the search was illegal because, although he concedes that the officer had probable cause to conduct a stop or frisk or to arrest the appellant, he argues that the officer did not have the right to conduct the search. The appellant contended that this was not a proper stop and frisk because the purpose of such a limited search is not to discover evidence of crime, but rather to allow the officer to pursue his investigation without fear of violence because of concealed weapons. The State argued that the search was proper because, it argues, the dispatch's indication that the perpetrators were leaving and mobile provided the exigent circumstances for an exception to a warrantless search.
It is clear from the officer's testimony that, in discovering the forged and stolen checks in the perpetrators' pockets, he was not conducting a pat-down for weapons, which is permitted in the stop and frisk situation, but rather was searching the suspects for evidence. See LaFave, Search and Seizure § 9.4(b) (2d ed. 1987) ("Moreover, once the pat-down has determined that the suspect is not armed, the police may not without probable cause once again search the suspect and confiscate the contents of his pockets"). During the officer's testimony at trial, defense counsel asked him, "Why did you not immediately arrest them?" The officer responded, "I wanted to look for the evidence first." The officer's testimony further revealed that he conducted the search because he feared that, if given the opportunity, the perpetrators could have easily destroyed the checks. *Page 359 
In this case we need not determine the probability that evidence would have been found on the appellant's person and that such evidence could have been destroyed, because the search of the appellant was conducted pursuant to a custodial arrest.
 "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."
United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467,477, 38 L.Ed.2d 427 (1973).
In the present case, although precise words were not spoken referring to the appellant's being placed under arrest, until after the search was conducted, the probable cause existed for the arrest prior to the search.
A search conducted prior to the formal act of arresting is unreasonable only where "a lawful arrest could not have been made prior to the search." LaFave, Search and Seizure, § 5.4(a) (2d ed. 1987).
 "In . . . Peters v. New York [392 U.S. 40, 41, 88 S.Ct. 1912, 1912, 20 L.Ed.2d 917 (1968)], an off-duty policeman, after hearing a noise at his door and seeing two men tiptoeing out of an alcove toward the stairway, entered the hallway and slammed the door loudly behind him, which precipitated a flight down the stairs. The officer gave chase and collared one of the men, [whom] he questioned and then searched, resulting in the discovery of burglar's tools in an opaque plastic envelope. The majority of the Court, in upholding this discovery as the fruit of a search incident to arrest (rather than a stop and frisk as the state contended), stressed that 'the arrest had for purposes of constitutional justification already taken place before the search commenced.' This prompted Justice Harlan, concurring, to remark:
 " 'In the course of upholding Peters' conviction, the Court makes [a point] that may lead to future confusion. [It] concerns the "moment of arrest." If there is an escalating encounter between a policeman and a citizen, beginning perhaps with a friendly conversation but ending in imprisonment, and if evidence is developing during the encounter, it may be important to identify the moment of arrest, i.e., the moment when the policeman was not permitted to proceed further unless he by then had probable cause. This moment-of-arrest problem is not, on the Court's premises, in any way involved in this case: The Court holds that Officer Lasky had probable cause to arrest at the moment he caught Peters, and hence probable cause clearly preceded anything that might be thought an arrest. The Court implies, however, that although there is no problem about whether the arrest of Peters occurred late enough, i.e., after probable cause developed, there might be a problem about whether it occurred early enough, i.e., before Peters was searched. This seems to me a false problem. Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search. If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is no case in which a defendant may validly say, "Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he *Page 360 
did not in fact arrest me until afterwards." '
". . . .
 "And thus the Supreme Court correctly concluded in Rawlings v. Kentucky, [448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980),] that 'where the formal arrest quickly followed on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa,' so long as the fruits of the search were 'not necessary to support probable cause to arrest.' "
LaFave, Search and Seizure, § 5.4(a) (2d ed. 1987).
In the present case, the officer who found the stolen and forged check in the appellant's pocket had probable cause to arrest the appellant; thus, the checks were legally taken in a seizure incident to a valid warrantless arrest. "An arrest without a warrant may be made in a public place on probable cause without exigent circumstances. United States v. Watson,423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)." Bush v.State, 523 So.2d 538, 546 (Ala.Cr.App. 1988). "Probable cause is concerned with 'probabilities,' that 'are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Carter v. State, 435 So.2d 137, 139 (Ala.Cr.App. 1982), quoting Brinegar v. United States, 338 U.S. 160,69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
 " 'When a police officer makes an arrest on the basis of a message received over the police radio, the question of probable cause is to be adjudged upon the full information which caused the message to be sent out over the radio and not upon the basis of the message alone.' 5 Am.Jur.2d Arrest § 46, 1988 Cumulative Supplement at 277; Brinks v. State, 500 So.2d 1311, 1313
(Ala.Cr.App. 1986); Campbell v. State, 354 So.2d 325, 327 (Ala.Cr.App. 1977). See also Ex parte Peoples, 510 So.2d 574, 576-77 (Ala.), cert. denied, Peoples v. Alabama, [484 U.S. 933] 108 S.Ct. 307, 98 L.Ed.2d 266 (1987)."
McLeod v. State, 545 So.2d 191, 193 (Ala.Cr.App. 1988).
In the present case, the cashier who worked for the grocery store testified that she had observed the appellant, while with the other two men, attempt to cash a check at the grocery store earlier on the day in question. The manager told the men that they should take the check to a bank in order to cash it. The cashier testified that she then observed the three men leave the store, but that they returned later in the day and asked her to cash the check. She testified that she took the check and asked for an identification. The appellant stated that he had none and that she replied that she could not cash the check. She said the men then left. The cashier testified that she recognized the signature on the check as a forgery, because her husband had worked for Holland Machine Shop and therefore she was familiar with Greg Holland's signature on checks. Therefore, based on that knowledge, she testified that she knew that the signature, purporting to be that of Greg Holland, on the check which the appellant attempted to negotiate, was a forgery. She testified that she then informed the store manager of that fact and instructed him to call the police. The manager then called the police and gave a detailed description of the three black males. Thus, based on this information, the police officer was able to locate the three men in the vicinity of the crime, in the area indicated by the dispatch, wearing clothes that matched those described in the "lookout" dispatch approximately a minute and a half after he received the dispatch. This information was sufficient to establish probable cause for a warrantless arrest.
AFFIRMED.
All the Judges concur. *Page 361